JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Delta Air Lines, Inc., Delta Private Jets, Inc., MLT, Inc., Callaway Golf Company, Callaway Golf Interactive, Inc., Callaway Golf Sales Company, uPlay, Inc., City of Houston, Diamond Foods, LLC, et al.

**(b)** County of Residence of First Listed Plaintiff   Fulton County, Georgia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Nix, Patterson & Roach, LLP; 2900 St. Michael Drive, Suite 500; Texarkana, TX 75503; (903) 223-3999.  See Complaint for additional attorneys.

## DEFENDANTS
Visa, Inc., Visa U.S.A., Inc., Visa International Service Association, MasterCard Incorporated, and MasterCard International Incorporated

County of Residence of First Listed Defendant   San Mateo, California
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government   Plaintiff | ☒ 3   Federal Question   *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government   Defendant | ☐ 4   Diversity   *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☒ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1

Brief description of cause:
Antitrust action against Visa and MasterCard.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
unknown

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE   John Gleeson; Ronnie Abrams

DOCKET NUMBER   05-MD-1720;13-CV-3477

DATE
08/13/13

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

Delta Air Lines, Inc., Delta Private Jets, §
Inc., MLT, Inc., Callaway Golf §
Company, Callaway Golf Interactive, §
Inc., Callaway Golf Sales Company, §
uPlay, Inc., City of Houston, Diamond §
Foods, LLC, Emerald Foods, Inc., KEL, §
Inc. d/b/a Dimensions, Duke Energy §
Corporation, Cinergy Corporation, Duke §
Energy Business Services LLC, Duke §
Energy Carolinas LLC, Duke Energy §
Florida, Inc., Duke Energy Ohio, Inc., §
Duke Energy Indiana, Inc., Duke Energy §
Kentucky, Inc., Duke Energy Progress, §
Inc., Progress Energy Services Company §
LLC, Progress Energy, Inc., Harris §
County, Texas, Harris County Hospital §
District d/b/a Harris County Health §
System, Host Hotels & Resorts, L.P., §
HST Lessee SLT LLC, HST Lessee §
Boston LLC, HST Lessee Keystone §
LLC, HST Lessee Needham LLC, HST §
Lessee SNYT LLC, HST Lessee CMBS §
LLC, HST Lessee San Diego LP, HST §   **Civil Action No. 13-621**
Lessee Tucson LLC, HST Lessee SR §
Houston LP, HST Lessee WNY LLC, §
HST Union Square LLC, CCSH Atlanta §
LLC, HST WRN LLC, HST Lessee §
Cincinnati LLC, HST Lessee Denver §
LLC, HST Lessee Indianapolis LLC, §
HST Kierland LLC, HST Lessee LAX §
LP, HST Lessee Mission Hills LP, HST §
Grand Central LLC, HST W. Seattle §
LLC, HST Lessee S. Coast LP, HST §
Lessee Waltham LLC, Group 1 §
Automotive, Inc., K Partners Hospitality §
Group, LP, The Men's Wearhouse, Inc., §

Reliant Energy Retail Services LLC, §
NRG EV Services LLC d/b/a eVgo, US §
Retailers LLC d/b/a Pennywise Power, §
Everything Energy LLC d/b/a §
Independence Energy, Red Wing Brands §
of America, Inc., Red Wing Shoe §
Company, Inc., Service Corporation §
International, SCI Funeral & Cemetery §
Purchasing Cooperative Inc., The §
Neptune Society, Inc., Suit Mart, Inc., §
Valero Energy Corporation, Valero §
Marketing and Supply Company, W.W. §
Grainger, Inc., Zoro Tools, Inc., Imperial §
Supplies LLC, GHC Specialty Brands, §
LLC, Air Canada, Societe Air France, §
Air New Zealand Limited, Blue Nile, §
LLC, CheapCarribbean.com, Inc., El Al §
Israel Airlines Ltd., Etihad Airways, §
EVA Airways Corp., LQ Management §
L.L.C., La Quinta Inns, Inc., Pier 1 §
Imports (U.S.), Inc., Qantas Airways §
Limited, Jetstar Airways Limited, §
RadioShack Corporation, Kiosk §
Operations, Inc., SCK, Inc. a/k/a SC §
Kiosks, Inc., TE Electronics LP, Atlantic §
Retail Ventures, Inc., ITC Service, Inc., §
Red Roof Inns, Inc., Red Roof §
Franchising, LLC, RRI Reservations, §
LLC, R-Roof I, LLC, R-Roof II, LLC, §
R-Roof III, LLC, R-Roof IV, LLC, R- §
Roof V, LLC, R-Roof VI, LLC, R-Roof §
Holdings I, LLC, R-Roof Holdings II, §
LLC, R-Roof Funds, LLC, R-Roof §
Assets, LLC, R-Roof Business Trust I, §
R-Roof Business Trust IV, R-Roof §
Business Trust VI, R-Roof Mezz I, LLC, §
R-Roof Mezz II, LLC, R-Roof Mezz III, §
LLC, R-Roof Mezz IV, LLC, R-Roof §
Mezz V, LLC, R-Roof Mezz VI, LLC, §
R-Roof Mezz VI A, LLC, R-Roof Mezz §

VI B, LLC, Singapore Airlines Limited,                    §
The Mark Travel Corporation, The Mark                    §
Travel Corporation dba Lamacchia                         §
Enterprises Inc., The Mark Travel                        §
Corporation dba United Vacations                         §
Hawaii, MGM Resorts Vacations, LLC                       §
dba MGM Mirage Resorts Vacations,                        §
The Mark Travel Corporation dba Blue                     §
Sky Tours Inc., The Mark Travel                          §
Corporation dba Nevada Coaches LLC,                      §
The Mark Travel Corporation dba                          §
Showtime Tours, Trans Global Tours,                      §
LLC, The Mark Travel Corporation dba                     §
Adventure Tours USA, The Mark Travel                     §
Corporation dba VAX Vacation Access,                     §
The Mark Travel Corporation dba Mark                     §
International, Bestway Limousine, Inc.                    §
dba Casino Holiday, Vacations Together,                  §
Inc., Vacation Together Inc. dba Sears                   §
Vacation, Traterra, The Mark Travel                      §
Corporation dba Trisept Solutions, The                   §
Mark Travel Corporation dba Global                       §
Booking Solutions (G2 Switchworks),                      §
Bestway Limousine, Hidden Glen at                        §
Bentdale Farms, TXU Energy Retail                        §
Company LLC, Orbitz Worldwide, LLC,                      §
Orbitz LLC ("Orbitz.com"), Trip                          §
Network Inc. ("Cheaptickets.com"),                       §
Blarney Castle Oil Co., OnCue                            §
Marketing, LLC, Shaw's Gulf, LLC                         §
(formerly known as Shaw's Gulf Inc.),                    §
Jack Griffith's Gas-Up, LLC (formerly                    §
known as Jack Griffith's Gas-Up, Inc.),                  §
MAPCO Express, Inc., Mary Kay Inc.,                      §
Ricker Oil Company, Inc., Wesco Inc.,                    §
ClubCorp USA, Inc., Fastrac Markets,                     §
LLC, Cinemark USA, Inc., CNMK                            §
Texas Properties, LLC, Laredo Theater,                   §
Ltd., Greeley, Ltd., Cinemark Partners II,               §
Ltd., Century Theaters, Inc., J Hilburn,                 §

3

Inc., United Supermarkets, LLC, Murphy
Oil USA, Inc., Travelocity.com LP,
Amway Corp., Alticor Inc., CST Brands,
Inc., CST USA, Inc., CST Services,
LLC, Autotronic Systems, Inc., Big
Diamond, LLC, Big Diamond Number 1,
LLC, CST Arkansas Stations, LLC, CST
California Stations, Inc., CST Diamond,
LP, CST Marketing and Supply
Company, CST Metro LLC, CST
Security Services, Inc., Diamond
Shamrock Arizona, Inc., Diamond
Shamrock Stations, Inc., Emerald
Marketing, Inc., National Convenience
Stores Incorporated, Sigmor Beverage,
Inc., Sigmor Company, LLC, Sigmor
Number 5, Inc., Sigmor Number 43, Inc.,
Sigmor Number 79, Inc., Sigmor
Number 80, Inc., Sigmor Number 103,
Inc., Sigmor Number 105, Inc., Sigmor
Number 119, Inc., Sigmor Number 178,
Inc., Sigmor Number 196, Inc., Sigmor
Number 238, Inc., Sigmor Number 259,
Inc., Sigmor Number 422, Inc., Skipper
Beverage Company, LLC, Sunshine
Beverage Co., TOC-DS Company,
Valley Shamrock, Inc., and VRG
Diamond Holdings, LLC

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**Plaintiffs,**

**vs.**

Visa, Inc., Visa U.S.A., Inc., Visa
International Service Association,
MasterCard Incorporated, and
MasterCard International Incorporated

**Defendants.**

4

## COMPLAINT AND DEMAND FOR JURY TRIAL

In this Complaint against Defendants Visa, Inc., Visa U.S.A., Inc., Visa International Service Association, MasterCard Incorporated, and MasterCard International Incorporated, Plaintiffs aver and allege as follows:

## INTRODUCTION

1.      This action is brought against Visa, Inc., Visa U.S.A., Inc., and Visa International Service Association (collectively "Visa"); MasterCard Incorporated and MasterCard International Incorporated (collectively "MasterCard").

2.      Visa and MasterCard have in the past and continue to manage, coordinate, and govern a combination and conspiracy in restraint of trade within the meaning of the Sherman Antitrust Act, 15 U.S.C. § 1.  Each combination and conspiracy has as its members the overwhelming majority of banks or financial institutions that issue credit and debit cards in the United States.  The vast majority of the banks and financial institutions that are members of Visa are also members of MasterCard, and issue both Visa-branded and MasterCard-branded credit and debit cards.  These member banks are independently owned and managed banks and financial institutions that compete to issue credit and debit cards to consumers. However, through their membership and agreement to abide by the rules of Visa and MasterCard, each member bank has agreed not to compete for merchant acceptance of the credit and debit cards that it issues.

5

3.     There are two main categories of payment cards: credit (including charge) cards and debit cards.  Credit cards are payment cards that allow consumers to make purchases on credit.  Charge cards are similar to credit cards, but require that the full balance be paid upon receipt of the billing statement.  Debit cards are linked to a consumer's demand account or are prepaid.

4.     Banks earn income on credit (and charge) cards through fees and charges to the cardholder, including interest on the account balance, and from the fees and penalties that come with late payment on card balances.  Banks earn income on debit cards through the opportunity to use the funds a consumer maintains in his or her account and on various fees associated with those accounts. Banks also earn income on credit and debit cards through the interchange fees paid by merchants.  Interchange fees are imposed on merchants by Visa and MasterCard for the privilege of accepting the issuing bank's card from a consumer as a means of payment.  These fees are collected from the merchant and paid to the issuer of the card.  The profitability to issuing banks of credit and debit cards directly increases with the size and frequency of transactions in which the cards are used.

5.     Banks issuing credit and debit cards compete with one another to issue credit and debit cards to consumers (also referred to as "cardholders") who use those cards to purchase goods and services from merchants.  Banks that are members of Visa and MasterCard compete with each other in the issuance of credit

and debit cards to consumers.  For example, issuing banks offer cards with various combinations of interest rates, annual fees, cash back rewards, points, and other features to compete for cardholders and to induce cardholders to use their cards.

6.      Visa and MasterCard have adopted nearly identical rules, which their member banks agree to and impose on merchants that accept cards issued by those banks.  These rules, or Competitive Restraints, eliminate competition among their member banks for merchant acceptance of credit cards and debit cards.  Because Visa and MasterCard have as their members nearly all card issuers in the United States, and because those card issuers have agreed to rules that preclude them from independently competing for merchant acceptance, Visa and MasterCard and their members have obtained and maintained market power in the market for merchant acceptance of credit cards and the market for merchant acceptance of debit cards in the United States.  The exercise of this market power has led merchants to pay excessive interchange fees.  In this manner, Visa and MasterCard have unlawfully restrained competition in these markets.

7.      The principal rules that constitute the Competitive Restraints are the setting of "default" interchange fees, the Honor All Cards Rules, the All Outlets Rules, the No Discount Rules, and the No Surcharge Rules.  These rules have precluded merchants from gaining the benefits of competition as to the terms for the acceptance of cards of particular issuing banks and have precluded card issuers

from competing for merchant acceptance of their cards.  As a consequence, the setting of "default" interchange fees effectively fixes the price of acceptance at a supra-competitive level.  Plaintiffs have paid significantly higher costs to accept Visa-branded and MasterCard-branded credit and debit cards than they would if the Member Banks issuing such cards competed for merchant acceptance.

8.     Because of their participation in the Competitive Restraints through their membership in Visa and MasterCard, issuing banks do not compete for transaction volume by independently competing for merchant acceptance.

9.     Visa and MasterCard, on behalf of their member banks, have exploited their market power in the market for merchant acceptance of credit cards and the market for merchant acceptance of debit cards by creating interchange fee schedules designed to increase the amount of interchange issuing banks are able to obtain from merchants.  While Visa and MasterCard nominally refer to these schedules as "default" interchange fee schedules, suggesting it is possible for issuing banks and merchants to gain different interchange rates by entering acceptance agreements between themselves, the Competitive Restraints prevent such agreements.  The Competitive Restraints also eliminate the features of Visa and MasterCard to compete for merchant acceptance through setting low "default" interchange fees.  By setting and enforcing supra-competitive interchange fees applicable to all merchants that accept cards issued by their members, Visa and

MasterCard exercise the market power gained by their combinations and conspiracies.

10.    Over the past decade, judicial efforts to curb the exercise of market power by the Visa and MasterCard combinations have been ineffective.  In 2003, the exclusivity rules of both combinations, which prohibited member banks from issuing cards competing on American Express or Discover networks, were declared unlawful.  In that same year, in a class action settlement, Visa and MasterCard agreed to cease using the Honor All Cards Rules to tie credit card acceptance and debit card acceptance.  Those actions did not diminish Visa's and MasterCard's power to dictate price and prevent competition.  Immediately after those actions, both combinations increased the credit card interchange fees extracted from merchants.  The debit card interchange fees they were imposing after these judicial actions were subsequently found by the Federal Reserve Board to be significantly above cost.

11.    In 2008, in response to a U.S. Department of Justice investigation, Visa withdrew its rule limiting merchants' ability to accept PIN debit cards.  Two years later, in a settlement with the Department of Justice, the Visa and MasterCard combinations both amended their rules to allow merchants to offer discounts to consumers in broader circumstances than previously allowed.  These

changes did not diminish the combinations' market power or lead to a reduction in interchange fees paid by merchants.  Instead, interchange fees continue to increase.

12.     In 2011, as mandated by the Durbin Amendment to the Dodd-Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. 1693o-2, the Federal Reserve Board set a maximum level of interchange fees that large banks could levy on debit card transactions and eliminated any distinction between signature debit (which carried interchange rates comparable to credit interchange rates) and PIN debit interchange.  This maximum fee was set significantly below the then-existing interchange fee levels set by Visa and MasterCard for debit card transactions.  The Federal Reserve Board action did not apply to the approximately one-third of debit cards issued by smaller, non-regulated banks, nor did it apply to credit cards.  The Federal Reserve Board did not prohibit debit or credit interchange fees from being set below this maximum level.  Of note, on July 31, 2013 Judge Richard Leon held in *NACS, et al. v. Board of Governors;* Civil Case No. 11-02075 (D. D.C. July 31, 2013) that the Federal Reserve Board's regulation did not comply with the intent of the Durbin Amendment.

13.     If freed of the imposition of "default" interchange fees and the Competitive Restraints, issuing banks and merchants would operate in competitive markets for merchant acceptance of credit cards and merchant acceptance of debit cards and benefit from competition among issuing banks as to interchange fees.

10

Collectively set interchange fees do not protect merchants such as Plaintiffs, but rather allow issuing banks to charge interchange fees far in excess of the issuing banks' costs.  In competitive markets, interchange fees would move to competitive levels, and the interchange fees paid by Plaintiffs would be substantially below the amounts they have paid since January 1, 2004.  If merchants had the ability to use competitive strategies with respect to their acceptance of the cards of individual issuers, they would induce competition among issuing banks that would lead to lower interchange fees.

14.    Plaintiffs collectively paid hundreds of millions of dollars in their last fiscal year alone in credit and debit interchange fees to issuing banks that are members of Visa and MasterCard.  Interchange fees are generally one of a merchant's largest operating expense items.  Elimination or modification of the Competitive Restraints and restoration of competitive markets for merchant acceptance would substantially reduce interchange fees, allowing Plaintiffs to operate more efficiently and at lower costs, to the benefit of consumers.  Plaintiffs operate in intensely competitive markets and would use the savings from a reduction in their interchange costs to increase their competitiveness by enhancing the value their customers receive.

## JURISDICTION AND VENUE

15.   The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation), because this action arises under Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 4 of the Clayton Act (15 U.S.C. § 15(a)).

16.   Venue is proper in the United States District Court for the Eastern District of Texas under 28 U.S.C. §§ 1391 and 15 U.S.C. §§ 15 and 22. Defendants reside in, are found in, have agents in, and/or transact business in this District as provided in 28 U.S.C. § 1391(b) and (c) and in Sections 4 and 12 of the Clayton Act (15 U.S.C. §§ 15 and 22).   Thousands of merchants located in the Eastern District of Texas accept Visa and/or MasterCard Credit Cards and Debit Cards issued by one or more member banks.   A substantial part of the interstate trade and commerce involved and affected by the alleged violations of the antitrust laws was and is carried on within the Eastern District of Texas.   Accordingly, the acts complained of have had and will have substantial anticompetitive effects in this judicial district.

## DEFINITIONS

17.   For purposes of this Complaint, the following definitions apply.

18.   "Credit cards" are payment cards enabling the cardholder to purchase goods or services from any merchant that has an agreement to accept such cards.

The credit cards at issue here are general purpose payment cards, as distinguished from private label cards, which can only be used at a single merchant.  Payment to a merchant for the goods or services purchased using a credit card is made by the issuing bank of the card on behalf of the cardholder, with repayment by the cardholder subject to an agreement between the issuing bank and the cardholder. Credit cards enable a cardholder to obtain goods or services from a merchant on credit provided by the card issuer.  Credit card issuers compete for consumers by offering a variety of terms and types of cards, which vary by level of rewards that are intended to induce consumers to use their cards.  Cards with a higher level of rewards are often referred to as "premium" cards and carry higher interchange fees, though they afford no additional benefits to merchants.  Credit cards include charge cards, which allow the cardholder to obtain goods or services with a grace period before the cardholder is required to pay his or her full balance.

19.    "Debit cards" are payment cards that allow holders of accounts at a bank to pay for goods or services or to obtain cash by directly accessing their accounts.  They also include pre-paid cards, which require a prepayment of the amount that can be drawn by the user of the card.  There are two methods of authenticating debit cards.  PIN debit cards require the cardholder to enter a four-digit personal identification number (PIN) to authenticate the cardholder. Signature debit cards usually require the cardholder's signature at the time of the

transaction. In the past, some PIN debit cards did not carry interchange fees or were subject to reverse interchange -where the merchant received a fee for card acceptance. Signature debit cards generally carried higher interchange fees, some of which equaled the interchange fees charged for credit card transactions. In 2011, pursuant to the Durbin Amendment, Federal Reserve Board regulations set the maximum interchange fee for regulated issuers at $.21 plus 0.05% (plus an additional $.01 for fraud prevention for eligible issuers), or an average of $.23-.24 per debit transaction. In contrast, the signature debit interchange fees previously set by Visa and MasterCard average $.58 and $.59, respectively, for the same issuers. Again, on July 31, 2013 Judge Richard Leon invalidated these regulations as inconsistent with the intent of the Durbin Amendment.

20. An "issuing bank" is a member of Visa or MasterCard that issues general purpose credit or debit cards to cardholders. The majority of issuing banks are members of both Visa and MasterCard and compete with one another to issue cards to potential cardholders and to encourage the use of their cards by cardholders.

21. An "acquiring bank" is a member of Visa or MasterCard that acquires purchase transactions from merchants. All acquiring banks are members of Visa and MasterCard. As member banks, acquiring banks act as gatekeepers, ensuring that card transactions are routed over the Visa or MasterCard networks, that

14

interchange fees set by Visa and MasterCard are paid on all transactions, and that merchants abide by the rules imposed by Visa and MasterCard.  Acquiring banks compete with one another for the acquisition business of merchants.

22.   "Network services" include, among other things, the services of authorization, clearance, and settlement of payment card transactions that the members of Visa and MasterCard have delegated to the networks to provide on the members' behalf.  Authorization, clearance, and settlement refers to the process by which payment card transactions are completed.

23.   "Interchange fee" is the fee that issuing banks receive and merchants pay when they accept a credit card or debit card issued by a member of the Visa or MasterCard combinations.   Under the agreements by and among Visa and its member banks and MasterCard and its member banks, the so-called "default" interchange fees are set by Visa and MasterCard, respectively, and the payment on interchange and other rules are enforced through the acquiring banks.

24.   "Merchant discount" is the term used to describe the total amount of fees and other costs deducted from the original transaction amount, reflecting a merchant's incremental cost of acceptance.  The merchant discount includes the interchange fee.

## THE PARTIES

## PLAINTIFFS

25.     Plaintiff Delta Air Lines, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Delta Air Lines, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Delta Air Lines, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Delta Air Lines, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.  In addition, Delta Air Lines, Inc. is the successor in interest to claims and causes of action formerly belonging to Northwest Airlines Corp. pursuant to a 2009 merger of those two airlines.  Prior to the merger, Northwest Airlines Corp. accepted both Visa and MasterCard debit and credit cards for payment and was forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Delta Air Lines, Inc. therefore asserts claims in this lawsuit both in its own name and as the successor in interest to claims belonging to Northwest Airlines Corp. pursuant to the 2009 merger.

26.     Plaintiff Delta Private Jets, Inc. is a Kentucky corporation with its principal place of business in Erlanger, Kentucky.  Delta Private Jets, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Delta

Private Jets, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Delta Private Jets, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

27.     Plaintiff MLT, Inc. is a Minnesota corporation with its principal place of business in Atlanta, Georgia. MLT, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, MLT, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. MLT, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

28.     Plaintiff Callaway Golf Company is a Delaware corporation with its principal place of business in Carlsbad, California. Callaway Golf Company accepts both Visa and MasterCard debit and credit cards for payment in its stores and online. Accordingly, Callaway Golf Company has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Callaway Golf Company, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

29.     Plaintiff Callaway Golf Interactive, Inc. is a Texas corporation with its principal place of business in Austin, Texas. Callaway Golf Interactive, Inc. accepts both Visa and MasterCard debit and credit cards for payment online.

Accordingly, Callaway Golf Interactive, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   Callaway Golf Interactive, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

30.   Plaintiff Callaway Golf Sales Company is a California corporation with its principal place of business in Carlsbad, California.  Callaway Golf Sales Company accepts both Visa and MasterCard debit and credit cards for payment online.   Accordingly, Callaway Golf Sales Company has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   Callaway Golf Sales Company, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

31.   Plaintiff uPlay, Inc. is a Delaware corporation with its principal place of business in Carlsbad, California.  uPlay, Inc. accepts both Visa and MasterCard debit and credit cards for payment online.  Accordingly, uPlay, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  uPlay, , Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

32.   Plaintiff City of Houston is a Texas municipality located in Harris County, Texas.  The City of Houston accepts both Visa and MasterCard debit and

credit cards for payment.  Accordingly, the City of Houston has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  The City of Houston, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

33.    Plaintiff Diamond Foods, LLC is a Louisiana limited liability company with its principal place of business in Baton Rouge, Louisiana.  Diamond Foods, LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores.    Accordingly, Diamond Foods, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Diamond Foods, LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

34.    Plaintiff Emerald Foods, Inc. is a Texas corporation with its principal place of business in Houston, Texas.  Emerald Foods, Inc. accepts both Visa and MasterCard debit and credit cards for payment in its stores.  Accordingly, Emerald Foods, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.    Emerald Foods, Inc., therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

35.    Plaintiff KEL, Inc. d/b/a Dimensions is a Texas corporation with its principal place of business in Houston, Texas.  KEL, Inc. d/b/a Dimensions accepts

both Visa and MasterCard debit and credit cards for payment in its stores and online. Accordingly, KEL, Inc. d/b/a Dimensions has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. KEL, Inc. d/b/a Dimensions, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

36.     Plaintiff Duke Energy Corporation is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Duke Energy Corporation accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Duke Energy Corporation has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Duke Energy Corporation, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

37.     Plaintiff Cinergy Corporation is a Delaware Corporation with its principal place of business in Cincinnati, Ohio. Cinergy Corporation accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Cinergy Corporation has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Cinergy Corporation, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

38.     Plaintiff Duke Energy Business Services LLC is a North Carolina

corporation with its principal place of business in Charlotte, North Carolina.  Duke Energy Business Services LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Duke Energy Business Services LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Duke Energy Business Services LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

39.    Plaintiff Duke Energy Carolinas LLC is a North Carolina corporation with its principal place of business in Charlotte, North Carolina.  Duke Energy Carolinas LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Duke Energy Carolinas, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Duke Energy Carolinas LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

40.    Plaintiff Duke Energy Florida, Inc. is a Florida corporation with its principal place of business in St. Petersburg, Florida.  Duke Energy Florida, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Duke Energy Florida, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.

21

Duke Energy Florida, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

41.    Plaintiff Duke Energy Ohio, Inc. is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  Duke Energy Ohio, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Duke Energy Ohio, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Duke Energy Ohio, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

42.    Plaintiff Duke Energy Indiana, Inc. is an Indiana corporation with its principal place of business in Plainfield, Indiana.  Duke Energy Indiana, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Duke Energy Indiana, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Duke Energy Indiana, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

43.    Plaintiff Duke Energy Kentucky, Inc. is a Kentucky corporation with its principal place of business in Cincinnati, Ohio.  Duke Energy Kentucky, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Duke Energy Kentucky, Inc. has been forced to pay Defendants'

supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   Duke Energy Kentucky, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

44.   Plaintiff Duke Energy Progress, Inc. is a North Carolina corporation with its principal place of business in Raleigh, North Carolina.   Duke Energy Progress, Inc. accepts both Visa and MasterCard debit and credit cards for payment.   Accordingly, Duke Energy Progress, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Duke Energy Progress, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

45.   Plaintiff Progress Energy Services Company LLC is a North Carolina corporation with its principal place of business in Raleigh, North Carolina. Progress Energy Services Company LLC accepts both Visa and MasterCard debit and credit cards for payment.   Accordingly, Progress Energy Services Company LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Progress Energy Services Company LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

46.   Plaintiff Progress Energy, Inc. is a North Carolina corporation with its principal place of business in Raleigh, North Carolina.   Progress Energy, Inc.

23

accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Progress Energy, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Progress Energy, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

47.    Plaintiff  Harris County, Texas is a body corporate and politic under the laws of the State of Texas located in Harris County, Texas.  Harris County, Texas accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Harris County, Texas has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Harris County, Texas, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

48.    Plaintiff, Harris County Hospital District d/b/a Harris County Health System ("District") is a political subdivision of the State of Texas.  The District accepted both Visa and MasterCard debit and credit cards for payment in 2012. Accordingly, the District has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  The District, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

49.    Plaintiff, Host Hotels & Resorts, L.P. is a Delaware corporation with its principal place of business in Bethesda, Maryland.  Host Hotels & Resorts, L.P. accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, Host Hotels & Resorts, L.P. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Host Hotels & Resorts, L.P., therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

50.    Plaintiff, HST Lessee SLT LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee SLT LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.  Accordingly, HST Lessee SLT LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   HST Lessee SLT LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

51.    Plaintiff, HST Lessee Boston LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST Lessee Boston LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Boston LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants'

Competitive Restraints.  HST Lessee Boston LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

52.    Plaintiff, HST Lessee Keystone LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee Keystone LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Keystone LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee Keystone LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

53.    Plaintiff, HST Lessee Needham LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee Needham LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Needham LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee Needham LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

54.    Plaintiff, HST Lessee SNYT LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST Lessee SNYT LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee SNYT LLC has been forced to pay

Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee SNYT LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

55.   Plaintiff, HST Lessee CMBS LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee CMBS LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee CMBS LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee CMBS LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

56.   Plaintiff, HST Lessee San Diego LP is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee San Diego LP accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee San Diego LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee San Diego LP, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

57.   Plaintiff, HST Lessee Tucson LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee Tucson LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores

and online.   Accordingly, HST Lessee Tucson LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee Tucson LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

58.    Plaintiff, HST Lessee SR Houston LP is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee SR Houston LP accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.  Accordingly, HST Lessee SR Houston LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee SR Houston LP, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

59.    Plaintiff, HST Lessee WNY LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee WNY LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee WNY LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee WNY LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

60.    Plaintiff, HST Union Square LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Union Square LLC

28

accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Union Square LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Union Square LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

61.   Plaintiff, CCSH Atlanta LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   CCSH Atlanta LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, CCSH Atlanta LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CCSH Atlanta LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

62.   Plaintiff, HST WRN LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST WRN LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online. Accordingly, HST WRN LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. HST WRN LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

63.     Plaintiff, HST Lessee Cincinnati LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST Lessee Cincinnati LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Cincinnati LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   HST Lessee Cincinnati LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

64.     Plaintiff, HST Lessee Denver LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST Lessee Denver LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Denver LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   HST Lessee Denver LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

65.     Plaintiff, HST Lessee Indianapolis LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.     HST Lessee Indianapolis LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Indianapolis LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   HST Lessee Indianapolis LLC, therefore, has

been injured in its business and/or property as a result of the unlawful conduct alleged herein.

66.    Plaintiff, HST Kierland LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Kierland LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Kierland LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Kierland LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

67.    Plaintiff, HST Lessee LAX LP is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee LAX LP accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee LAX LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee LAX LP, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

68.    Plaintiff, HST Lessee Mission Hills LP is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee Mission Hills LP accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Mission Hills LP has been forced

to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee Mission Hills LP, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

69.    Plaintiff, HST Grand Central LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST Grand Central LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.    Accordingly, HST Grand Central LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Grand Central LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

70.    Plaintiff, HST W. Seattle LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST W. Seattle LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.    Accordingly, HST W. Seattle LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST W. Seattle LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

71.    Plaintiff, HST Lessee S. Coast LP is a Delaware corporation with its principal place of business in Bethesda, Maryland.    HST Lessee S. Coast LP accepts both Visa and MasterCard debit and credit cards for payment in its stores

and online.   Accordingly, HST Lessee S. Coast LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee S. Coast LP, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

72.   Plaintiff, HST Lessee Waltham LLC is a Delaware corporation with its principal place of business in Bethesda, Maryland.   HST Lessee Waltham LLC accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, HST Lessee Waltham LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  HST Lessee Waltham LLC, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

73.   Plaintiff Group 1 Automotive, Inc. ("Group 1 Automotive") is a Delaware corporation with its principal place of business in Houston, Texas. Group 1 Automotive is asserting claims both in its own name and as assignee on behalf of affiliates that have assigned their claims to Group 1 Automotive (as identified in the attached Exhibit 1).  Group 1 Automotive and the assignees listed in Exhibit 1 are collectively referred to herein as "Group 1 Automotive."  Group 1 Automotive accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Group 1 Automotive has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.

33

Group 1 Automotive, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

74.     Plaintiff, K Partners Hospitality Group, LP is a Texas corporation with its principal place of business in San Antonio, Texas.  K Partners Hospitality Group, LP is asserting claims both in its own name and as assignee on behalf of affiliates that have assigned their claims to K Partners Hospitality Group, LP (as identified in the attached Exhibit 2).  K Partners Hospitality Group, LP and the assignees listed in Exhibit 2 are collectively referred to herein as "K Partners Hospitality Group, LP"  K Partners Hospitality Group, LP accepts both Visa and MasterCard debit and credit cards for payment in its stores and online. Accordingly, K Partners Hospitality Group, LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  K Partners Hospitality Group, LP, therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

75.     Plaintiff The Men's Wearhouse, Inc. is a Texas corporation with its principal place of business in Houston, Texas.  The Men's Wearhouse, Inc. is asserting claims both in its own name and as assignee on behalf of affiliates that have assigned their claims to The Men's Wearhouse, Inc. (as identified in the attached Exhibit 3).  The Men's Wearhouse, Inc. and the assignors listed in Exhibit 3 are collectively referred to herein as "The Men's Wearhouse, Inc."  The Men's

34

Wearhouse, Inc. accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.  Accordingly, The Men's Wearhouse, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  The Men's Wearhouse, Inc., therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

76.    Plaintiff Reliant Energy Retail Services LLC is a Delaware limited liability company with its principal place of business in Houston, Texas.  Reliant Energy Retail Services LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Reliant Energy Retail Services LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Reliant Energy Retail Services LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

77.    Plaintiff NRG EV Services LLC d/b/a eVgo is a Delaware limited liability company with its principal place of business in Houston, Texas. NRG EV Services LLC d/b/a eVgo accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, NRG EV Services LLC d/b/a eVgo has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. NRG EV Services LLC d/b/a eVgo, therefore, has been

injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

78.    Plaintiff US Retailers, LLC d/b/a Pennywise Power is a Delaware limited liability company with its principal place of business in Houston, Texas. US Retailers, LLC d/b/a Pennywise Power accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, US Retailers, LLC d/b/a Pennywise Power has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   US Retailers, LLC d/b/a Pennywise Power, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

79.    Plaintiff Everything Energy LLC d/b/a Independence Energy is a Delaware limited liability company with its principal place of business in Houston, Texas.  Everything Energy LLC d/b/a Independence Energy accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Everything Energy LLC d/b/a Independence Energy has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Everything Energy LLC d/b/a Independence Energy, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

80.    Plaintiff Red Wing Brands of America, Inc. is a Minnesota corporation with its principal place of business in Red Wing, Minnesota.  Red

Wing Brands of America, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Red Wing Brands of America, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Red Wing Brands of America, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

81.    Plaintiff Red Wing Shoe Company, Inc. is a Minnesota corporation with its principal place of business in Red Wing, Minnesota. Prior to 2005, Red Wing Shoe Company, Inc. accepted both Visa and MasterCard debit and credit cards for payment.  Accordingly, Red Wing Shoe Company, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.   Red Wing Shoe Company, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

82.    Plaintiff Service Corporation International is a Texas corporation with its principal place of business in Houston, Texas.   Service Corporation International accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Service Corporation International has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive

Restraints. Service Corporation International, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

83. Plaintiff SCI Funeral & Cemetery Purchasing Cooperative, Inc. is a Delaware Corporation with its principal place of business in Houston, Texas. SCI Funeral & Cemetery Purchasing Cooperative, Inc. is asserting claims as assignee on behalf of affiliates that have assigned their claims to SCI Funeral & Cemetery Purchasing Cooperative, Inc. (as identified in the attached Exhibit 4). SCI Funeral & Cemetery Purchasing Cooperative, Inc. and the assignors listed in Exhibit 4 are collectively referred to herein as "SCI Coop." SCI Coop accepts both Visa and MasterCard debit and credit cards for payment at its locations and online. Accordingly, SCI Coop. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. SCI Coop., therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

84. Plaintiff The Neptune Society, Inc. is a California corporation with its principal place of business in Plantation, Florida. The Neptune Society, Inc. accepts both Visa and MasterCard debit and credit cards for payment at its locations and online. Accordingly, The Neptune Society, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants'

38

Competitive Restraints.  The Neptune Society, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

85.    Plaintiff Suit Mart, Inc. is a Texas corporation with its principal place of business in Houston, Texas.  Suit Mart, Inc. accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.  Accordingly, Suit Mart, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Suit Mart, Inc., therefore, has been injured in its business and/or property as a result of the unlawful conduct alleged herein.

86.    Plaintiff Valero Energy Corporation is a Delaware corporation with its principal place of business in Houston, Texas.   Valero Energy Corporation accepts both Visa and MasterCard debit and credit cards for payment in its stores and online.   Accordingly, Valero Energy Corporation has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Valero Energy Corporation, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

87.    Plaintiff Valero Marketing and Supply Company is a Delaware corporation with its principal place of business in Houston, Texas.     Plaintiff Valero Marketing and Supply Company accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Plaintiff Valero Marketing and Supply

Company has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Plaintiff Valero Marketing and Supply Company, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

88.    Plaintiff, W.W. Grainger, Inc. is an Illinois corporation with its principal place of business in Lake Forest, Illinois.  W.W. Grainger, Inc. accepts both Visa and MasterCard debit and credit cards for payment in its stores and on-line..  Accordingly, W.W. Grainger, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. W.W. Grainger, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

89.    Plaintiff, Zoro Tools, Inc. is a Delaware corporation with its principal place of business in Buffalo Grove, Illinois.  Zoro Tools, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Zoro Tools, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Zoro Tools, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

90.    Plaintiff, Imperial Supplies LLC is a Delaware limited liability company with its principal place of business in Green Bay, Wisconsin.  Imperial

Supplies LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Imperial Supplies LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Imperial Supplies LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

91.    Plaintiff, GHC Specialty Brands, LLC is a Wisconsin limited liability company with its principal place of business in Janesville, Wisconsin.  GHC Specialty Brands, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, GHC Specialty Brands, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  GHC Specialty Brands, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

92.    Plaintiff Air Canada is a Canadian corporation with its principal place of business in Montreal, Province of Quebec, Canada.  Air Canada accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Air Canada has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Air Canada, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

41

93.    Plaintiff Societe Air France is a French corporation with its principal place of business in Paris, France.  Societe Air France accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Societe Air France has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Societe Air France, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

94.    Plaintiff Air New Zealand Limited is a New Zealand corporation with its principal place of business in Auckland, New Zealand.  Air New Zealand Limited accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Air New Zealand Limited has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Air New Zealand Limited, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

95.    Plaintiff Blue Nile, LLC is a Delaware corporation with its principal place of business in Seattle, Washington.  Blue Nile, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Blue Nile, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Blue Nile, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

96.    Plaintiff CheapCarribbean.com, Inc. is a Delaware corporation with its principal place of business in Doylestown, Pennsylvania. CheapCarribbean.com, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CheapCarribbean.com, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CheapCarribbean.com, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

97.    Plaintiff El Al Israel Airlines Ltd. is a corporation formed under the laws of Israel with its principal place of business at Ben Gurion Airport, Tel Aviv, Israel.  El Israel Airlines Ltd. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, El Al Israel Airlines Ltd. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  El Al Israel Airlines Ltd., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

98.    Plaintiff Etihad Airways is an Abu Dhabi, UAE corporation with its principal place of business in Abu Dhabi, United Arab Emirates.  Etihad Airways accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Etihad Airways has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.

Etihad Airways, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

99.   Plaintiff EVA Airways Corp. is a Taiwan, Republic of China corporation with its principal place of business in Taiwan, Republic of China. EVA Airways Corp. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, EVA Airways Corp. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  EVA Airways Corp., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

100.   Plaintiff LQ Management, L.L.C. is a Delaware corporation with its principal place of business in Irving, Texas.  LQ Management L.L.C. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, LQ Management, L.L.C. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  LQ Management, L.L.C., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

101.   Plaintiff La Quinta Inns, Inc. is a Delaware corporation with its principal place of business in Irving, Texas.  La Quinta Inns, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, La Quinta Inns, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to

abide by Defendants' Competitive Restraints.  La Quinta Inns, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

102.   Plaintiff Pier 1 Imports (U.S.), Inc. is a Delaware corporation with its principal place of business in Fort Worth, Texas.  Pier 1 Imports (U.S.), Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Pier 1 Imports (U.S.), Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Pier 1 Imports (U.S.), Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

103.   Plaintiff Qantas Airways Limited is an Australian corporation with its principal place of business in Mascot, New South Wales, Australia.   Qantas Airways Limited accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Qantas Airways Limited has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Qantas Airways Limited, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

104.   Plaintiff Jetstar Airways Limited is an Australian corporation with its principal place of business in Melbourne, Australia.   Jetstar Airways Limited accepts both Visa and MasterCard debit and credit cards for payment.

Accordingly, Jetstar Airways Limited has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Jetstar Airways Limited, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

105.   Plaintiff RadioShack Corporation is a Delaware corporation with its principal place of business in Fort Worth, Texas.  RadioShack Corporation accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, RadioShack Corporation has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  RadioShack Corporation, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

106.   Plaintiff Kiosk Operations, Inc. is a Delaware corporation with its principal place of business in Fort Worth, Texas.  Kiosk Operations, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Kiosk Operations, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Kiosk Operations, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

107.   Plaintiff SCK, Inc. a/k/a SC Kiosks, Inc. is a Delaware corporation with its principal place of business in Fort Worth, Texas.  SCK, Inc. a/k/a SC

Kiosks, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, SCK, Inc. a/k/a SC Kiosks, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. SCK, Inc. a/k/a SC Kiosks, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

108.   Plaintiff TE Electronics, LP is a Delaware corporation with its principal place of business in Fort Worth, Texas. TE Electronics, LP accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, TE Electronics, LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. TE Electronics, LP, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

109.   Plaintiff Atlantic Retail Ventures, Inc. is a Delaware corporation with its principal place of business in Fort Worth, Texas. Atlantic Retail Ventures, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Atlantic Retail Ventures, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Atlantic Retail Ventures, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

110.   Plaintiff ITC Service, Inc. is a Texas corporation with its principal place of business in Fort Worth, Texas.  ITC Service, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, ITC Service, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  ITC Service, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

111.   Plaintiff Red Roof Inns, Inc. is a Delaware corporation with its principal place of business in Columbus, Ohio.  Red Roof Inns, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Red Roof Inns, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Red Roof Inns, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

112.   Plaintiff Red Roof Franchising, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  Red Roof Franchising, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Red Roof Franchising, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive

Restraints.   Red Roof Franchising, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

113.   Plaintiff RRI Reservations, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  RRI Reservations, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, RRI Reservations, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  RRI Reservations, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

114.   Plaintiff R-Roof I, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof I, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof I, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof I, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

115.   Plaintiff R-Roof II, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof II, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof II, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by

Defendants' Competitive Restraints.  R-Roof II, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

116.   Plaintiff R-Roof III, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof III, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof III, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof III, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

117.   Plaintiff R-Roof IV, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof IV, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof IV, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof IV, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

118.   Plaintiff R-Roof V, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof V, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof V, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by

Defendants' Competitive Restraints.  R-Roof V, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

119.   Plaintiff R-Roof VI, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof VI, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof VI, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof VI, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

120.   Plaintiff R-Roof Holdings I, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Holdings I, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof Holdings I, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof Holdings I, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

121.   Plaintiff R-Roof Holdings II, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Holdings II, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-

Roof Holdings II, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Holdings II, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

122.   Plaintiff R-Roof Funds, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Funds, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Funds, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Funds, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

123.   Plaintiff R-Roof Assets, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Assets, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Assets, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Assets, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

124.   Plaintiff R-Roof Business Trust I is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Business Trust I accepts

both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Business Trust I has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Business Trust I, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

125. Plaintiff R-Roof Business Trust IV is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Business Trust IV accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Business Trust IV has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Business Trust IV, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

126. Plaintiff R-Roof Business Trust VI is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Business Trust VI accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Business Trust VI has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Business Trust VI, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

127. Plaintiff R-Roof Mezz I, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Mezz I, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Mezz I, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Mezz I, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

128. Plaintiff R-Roof Mezz II, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Mezz II, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Mezz II, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof Mezz II, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

129. Plaintiff R-Roof Mezz III, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio. R-Roof Mezz III, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, R-Roof Mezz III, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. R-Roof

Mezz III, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

130.   Plaintiff R-Roof Mezz IV, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Mezz IV, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof Mezz IV, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof Mezz IV, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

131.   Plaintiff R-Roof Mezz V, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Mezz V, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof Mezz V, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof Mezz V, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

132.   Plaintiff R-Roof Mezz VI, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Mezz VI, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof Mezz VI, LLC has been forced to pay Defendants' supra-competitive

interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof Mezz VI, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

133.   Plaintiff R-Roof Mezz VI A, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Mezz VI A, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof Mezz VI A, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof Mezz VI A, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

134.   Plaintiff R-Roof Mezz VI B, LLC is a Delaware corporation with its principal place of business in Columbus, Ohio.  R-Roof Mezz VI B, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, R-Roof Mezz VI B, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  R-Roof Mezz VI B, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

135.   Plaintiff Singapore Airlines Limited is a Singapore corporation with its principal place of business in Singapore.  Singapore Airlines Limited accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly,

Singapore Airlines Limited has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Singapore Airlines Limited, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

136. Plaintiff The Mark Travel Corporation is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin. The Mark Travel Corporation accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, The Mark Travel Corporation has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

137. Plaintiff The Mark Travel Corporation dba Lamacchia Enterprises, Inc. is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin. The Mark Travel Corporation dba Lamacchia Enterprises, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, The Mark Travel Corporation dba Lamacchia Enterprises, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Lamacchia Enterprises, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

138.   Plaintiff The Mark Travel Corporation dba United Vacations Hawaii is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin.  The Mark Travel Corporation dba United Vacations Hawaii accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation dba United Vacations Hawaii has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  The Mark Travel Corporation dba United Vacations Hawaii, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

139.   Plaintiff MGM Resorts Vacations, LLC dba MGM Mirage Resorts Vacations is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin.  MGM Resorts Vacations, LLC dba MGM Mirage Resorts Vacations accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, MGM Resorts Vacations, LLC dba MGM Mirage Resorts Vacations has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  MGM Resorts Vacations, LLC dba MGM Mirage Resorts Vacations, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

140.   Plaintiff The Mark Travel Corporation dba Blue Sky Tours, Inc. is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin.

The Mark Travel Corporation dba Blue Sky Tours, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation dba Blue Sky Tours, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Blue Sky Tours, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

141.   Plaintiff The Mark Travel Corporation dba Nevada Coaches, LLC is a Nevada corporation with its principal place of business in Las Vegas, Nevada.  The Mark Travel Corporation dba Nevada Coaches, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation dba Nevada Coaches, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Nevada Coaches, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

142.   Plaintiff The Mark Travel Corporation dba Showtime Tours is a Nevada corporation with its principal place of business in Las Vegas, Nevada.  The Mark Travel Corporation dba Showtime Tours accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation

dba Showtime Tours has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Showtime Tours, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

143. Plaintiff Trans Global Tours, LLC is a Minnesota corporation with its principal place of business in Milwaukee, Wisconsin. Trans Global Tours, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Trans Global Tours, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Trans Global Tours, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

144. Plaintiff The Mark Travel Corporation dba Adventure Tours USA is a Texas corporation with its principal place of business in Milwaukee, Wisconsin. The Mark Travel Corporation dba Adventure Tours USA accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, The Mark Travel Corporation dba Adventure Tours USA has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Adventure Tours USA, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

145.   Plaintiff The Mark Travel Corporation dba VAX Vacation Access is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.  The Mark Travel Corporation dba VAX Vacation Access accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation dba VAX Vacation Access has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  The Mark Travel Corporation dba VAX Vacation Access, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

146.   Plaintiff The Mark Travel Corporation dba Mark International is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin. The Mark Travel Corporation dba Mark International accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation dba Mark International has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Mark International, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

147.   Plaintiff Bestway Limousine, Inc. dba Casino Holiday is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.  Bestway

Limousine, Inc. dba Casino Holiday accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Bestway Limousine, Inc. dba Casino Holiday has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Bestway Limousine, Inc. dba Casino Holiday, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

148. Plaintiff Vacations Together, Inc. is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Vacations Together, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Vacations Together, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Vacations Together, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

149. Plaintiff Vacation Together, Inc. dba Sears Vacation is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Vacation Together, Inc. dba Sears Vacation accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Vacation Together, Inc. dba Sears Vacation has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Vacation Together, Inc.

dba Sears Vacation, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

150.   Plaintiff Traterra is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin.  Traterra accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Traterra has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Traterra, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

151.   Plaintiff The Mark Travel Corporation dba Trisept Solutions is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin. The Mark Travel Corporation dba Trisept Solutions accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, The Mark Travel Corporation dba Trisept Solutions has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Trisept Solutions, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

152.   Plaintiff The Mark Travel Corporation dba Global Booking Solutions (G2 Switchworks) is a Nevada corporation with its principal place of business in Milwaukee, Wisconsin.  The Mark Travel Corporation dba Global Booking Solutions (G2 Switchworks) accepts both Visa and MasterCard debit and credit

cards for payment. Accordingly, The Mark Travel Corporation dba Global Booking Solutions (G2 Switchworks) has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. The Mark Travel Corporation dba Global Booking Solutions (G2 Switchworks), therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

153.  Plaintiff Bestway Limousine is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Bestway Limousine accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Bestway Limousine has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Bestway Limousine, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

154.  Plaintiff Hidden Glen at Bentdale Farms is a Wisconsin corporation with its principal place of business in Cedarburg, Wisconsin. Hidden Glen at Bentdale Farms accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Hidden Glen at Bentdale Farms has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Hidden Glen at Bentdale Farms, therefore, has been

injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

155.   Plaintiff TXU Energy Retail Company, LLC is a Texas corporation with its principal place of business in Texas.  TXU Energy Retail Company, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, TXU Energy Retail Company, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  TXU Energy Retail Company, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

156.   Plaintiff Orbitz Worldwide, LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Orbitz Worldwide, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Orbitz Worldwide, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Orbitz Worldwide, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

157.   Plaintiff Orbitz, LLC ("Orbitz.com") is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Orbitz, LLC ("Orbitz.com") accepts both Visa and MasterCard debit and credit cards for

payment.  Accordingly, Orbitz, LLC ("Orbitz.com") has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Orbitz, LLC ("Orbitz.com"), therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

158.  Plaintiff Trip Network, Inc. ("Cheaptickets.com") is a Delaware corporation with its principal place of business in Chicago, Illinois.  Trip Network, Inc. ("Cheaptickets.com") accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Trip Network, Inc. ("Cheaptickets.com") has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Trip Network, Inc. ("Cheaptickets.com"), therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

159.  Plaintiff Blarney Castle Oil Co. is a Michigan corporation with its principal place of business in Bear Lake, Michigan.  Blarney Castle Oil Co. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Blarney Castle Oil Co. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Blarney Castle Oil Co., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

160.  Plaintiff OnCue Marketing, LLC is an Oklahoma limited liability company with its principal place of business in Stillwater, Oklahoma.  OnCue Marketing, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, OnCue Marketing, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  OnCue Marketing, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

161.  Plaintiff Shaw's Gulf, LLC (formerly known as Shaw's Gulf, Inc.) was an Oklahoma limited liability company with its principal place of business in Stillwater, Oklahoma.  Shaw's Gulf, LLC accepted both Visa and MasterCard debit and credit cards for payment.  Accordingly, Shaw's Gulf, LLC was forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Shaw's Gulf, LLC, therefore, was injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

162.  Plaintiff Jack Griffith's Gas-Up, LLC (formerly known as Jack Griffith's Gas-Up, Inc.) was an Oklahoma limited liability company with its principal place of business in Stillwater, Oklahoma.  Jack Griffith's Gas-Up, LLC accepted both Visa and MasterCard debit and credit cards for payment.  Accordingly, Jack Griffith's Gas-Up, LLC was forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.

Jack Griffith's Gas-Up, LLC, therefore, was injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

163.  Plaintiff MAPCO Express, Inc. is a Delaware corporation with its principal place of business in Brentwood, Tennessee. MAPCO Express, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, MAPCO Express, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. MAPCO Express, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

164.  Plaintiff Mary Kay Inc. is a Delaware corporation with its principal place of business in Addison, Texas.  Mary Kay Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Mary Kay Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Mary Kay Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

165.  Plaintiff Ricker Oil Company, Inc. is an Indiana corporation with its principal place of business in Anderson, Indiana.  Ricker Oil Company, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Ricker Oil Company, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.

Ricker Oil Company, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

166.   Plaintiff Wesco, Inc. is a Michigan corporation with its principal place of business in Muskegon, Michigan.  Wesco, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Wesco, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Wesco, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

167.   Plaintiff ClubCorp USA, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas.  ClubCorp USA, Inc. and certain of its subsidiaries accept both Visa and MasterCard debit and credit cards for payment.  Accordingly, ClubCorp USA, Inc. and such subsidiaries have been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  ClubCorp USA, Inc. and such subsidiaries, therefore, have been injured in their businesses and/or properties as a result of the unlawful conduct alleged herein.  ClubCorp USA, Inc. is asserting claims both in its own name and as assignee of claims formerly belonging to its subsidiaries that have been assigned to ClubCorp USA, Inc. (as identified in the attached Exhibit 5.)

168.   Plaintiff Fastrac Markets, LLC is a New York limited liability company with its principal place of business in Syracuse, New York.  Fastrac

Markets, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Fastrac Markets, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Fastrac Markets, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

169. Plaintiff Cinemark USA, Inc. is a Texas corporation with its principal place of business in Plano, Texas. Cinemark USA, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Cinemark USA, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Cinemark USA, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

170. Plaintiff CNMK Texas Properties, LLC is a Texas limited liability company with its principal place of business in Plano, Texas. CNMK Texas Properties, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, CNMK Texas Properties, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. CNMK Texas Properties, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

171.   Plaintiff Laredo Theater, Ltd. is a Texas corporation with its principal place of business in Plano, Texas.  Laredo Theater, Ltd. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Laredo Theater, Ltd. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Laredo Theater, Ltd., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

172.   Plaintiff Greeley, Ltd. is a Texas corporation with its principal place of business in Plano, Texas.  Greeley, Ltd. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Greeley, Ltd. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Greeley, Ltd., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

173.   Plaintiff Cinemark Partners II, Ltd. is a Texas corporation with its principal place of business in Plano, Texas.  Cinemark Partners II, Ltd. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Cinemark Partners II, Ltd. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Cinemark Partners II, Ltd., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

174.  Plaintiff Century Theaters, Inc. is a California corporation with its principal place of business in Plano, Texas.  Century Theaters, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Century Theaters, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Century Theaters, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

175.  Plaintiff J Hilburn, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas.  J Hilburn, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, J Hilburn, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  J Hilburn, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

176. Plaintiff United Supermarkets, LLC is a Texas limited liability company with its principal place of business in Lubbock, Texas.  United Supermarkets, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, United Supermarkets, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  United Supermarkets, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

177.   Plaintiff Murphy Oil USA, Inc. is a Delaware corporation with its principal place of business in El Dorado, Arkansas.  Murphy Oil USA, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Murphy Oil USA, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Murphy Oil USA, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

178.   Plaintiff Travelocity.com LP is a Delaware limited partnership with its principal place of business in Southlake, Texas.  Travelocity.com LP accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Travelocity.com LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Travelocity.com LP, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

179.   Plaintiff Amway Corp. (f/k/a Quixtar, Inc.) is a Virginia corporation with its principal place of business in Ada, Michigan.  Amway Corp. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Amway Corp. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Amway Corp., therefore, has been

injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

180.   Plaintiff Alticor Inc. is a Michigan corporation with its principal place of business in Ada, Michigan.  Alticor Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Alticor Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Alticor Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

181.   Plaintiff CST Brands, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  CST Brands, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CST Brands, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST Brands, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

182.     Plaintiff CST USA, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  CST USA, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CST USA, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by

Defendants' Competitive Restraints.  CST USA, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

183.    Plaintiff CST Services, LLC is a Delaware limited liability company with its principal place of business in San Antonio, Texas.  CST Services, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, CST Services, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. CST Services, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

184.    Plaintiff Autotronic Systems, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  Autotronic Systems, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Autotronic Systems, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Autotronic Systems, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

185.    Plaintiff Big Diamond, LLC is a Texas limited liability company with its principal place of business in San Antonio, Texas.  Big Diamond, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Big Diamond, LLC has been forced to pay Defendants' supra-

competitive interchange fees and to abide by Defendants' Competitive Restraints. Big Diamond, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

186.   Plaintiff Big Diamond Number 1, LLC is a Texas limited liability company with its principal place of business in San Antonio, Texas.  Big Diamond Number 1, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Big Diamond Number 1, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Big Diamond Number 1, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

187.   Plaintiff CST Arkansas Stations, LLC is an Arkansas limited liability company with its principal place of business in Irving, Texas.  CST Arkansas Stations, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CST Arkansas Stations, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST Arkansas Stations, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

188.   Plaintiff CST California Stations, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  CST California Stations, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, CST California Stations, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST California Stations, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

189.   Plaintiff CST Diamond, LP is a Texas limited partnership with its principal place of business in San Antonio, Texas.  CST Diamond, LP accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CST Diamond, LP has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST Diamond, LP, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

190.   Plaintiff CST Marketing and Supply Company is a Delaware corporation with its principal place of business in San Antonio, Texas.  CST Marketing and Supply Company accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CST Marketing and Supply Company has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST Marketing and Supply Company,

therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

191.   Plaintiff CST Metro LLC is a Michigan limited liability company with its principal place of business in San Antonio, Texas.  CST Metro LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, CST Metro LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST Metro LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

192.   Plaintiff CST Security Services, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  CST Security Services, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, CST Security Services, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  CST Security Services, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

193.   Plaintiff Diamond Shamrock Arizona, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas.  Diamond Shamrock Arizona, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Diamond Shamrock Arizona, Inc. has been forced to pay

Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Diamond Shamrock Arizona, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

194. Plaintiff Diamond Shamrock Stations, Inc. is a Delaware corporation with its principal place of business in San Antonio, Texas. Diamond Shamrock Stations, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Diamond Shamrock Stations, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Diamond Shamrock Stations, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

195. Plaintiff Emerald Marketing, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas. Emerald Marketing, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Emerald Marketing, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Emerald Marketing, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

196.   Plaintiff National Convenience Stores Incorporated is a Delaware corporation with its principal place of business in San Antonio, Texas.  National Convenience Stores Incorporated accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, National Convenience Stores Incorporated has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  National Convenience Stores Incorporated, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

197.   Plaintiff Sigmor Beverage, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Beverage, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Sigmor Beverage, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Sigmor Beverage, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

198.   Plaintiff Sigmor Company, LLC is a Delaware limited liability company with its principal place of business in San Antonio, Texas.  Sigmor Company, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Sigmor Company, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive

Restraints.  Sigmor Company, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

199.   Plaintiff Sigmor Number 5, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 5, Inc. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Sigmor Number 5, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Sigmor Number 5, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

200.   Plaintiff Sigmor Number 43, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 43, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 43, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 43, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

201.   Plaintiff Sigmor Number 79, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 79, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 79, Inc. has been forced to pay Defendants' supra-

competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 79, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

202.   Plaintiff Sigmor Number 80, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 80, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 80, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 80, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

203.   Plaintiff Sigmor Number 103, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 103, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 103, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 103, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

204.   Plaintiff Sigmor Number 105, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 105, Inc. accepts both Visa and MasterCard debit and credit cards for payment.

Accordingly, Sigmor Number 105, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 105, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

205.   Plaintiff Sigmor Number 119, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 119, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 119, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 119, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

206.   Plaintiff Sigmor Number 178, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 178, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 178, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 178, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

207.   Plaintiff Sigmor Number 196, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 196, Inc.

accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 196, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 196, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

208.   Plaintiff Sigmor Number 238, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 238, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 238, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 238, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

209.   Plaintiff Sigmor Number 259, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 259, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 259, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 259, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

210.   Plaintiff Sigmor Number 422, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sigmor Number 422, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Sigmor Number 422, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Sigmor Number 422, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

211.   Plaintiff Skipper Beverage Company, LLC is a Texas limited liability company with its principal place of business in San Antonio, Texas.  Skipper Beverage Company, LLC accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Skipper Beverage Company, LLC has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Skipper Beverage Company, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

212.   Plaintiff Sunshine Beverage Co. is a Texas corporation with its principal place of business in San Antonio, Texas.  Sunshine Beverage Co. accepts both Visa and MasterCard debit and credit cards for payment.  Accordingly, Sunshine Beverage Co. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  Sunshine

Beverage Co., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

213. Plaintiff TOC-DS Company is a Delaware corporation with its principal place of business in San Antonio, Texas. TOC-DS Company accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, TOC-DS Company has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. TOC-DS Company, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

214. Plaintiff Valley Shamrock, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas. Valley Shamrock, Inc. accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, Valley Shamrock, Inc. has been forced to pay Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints. Valley Shamrock, Inc., therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

215. Plaintiff VRG Diamond Holdings, LLC is a Texas limited liability company with its principal place of business in San Antonio, Texas. VRG Diamond Holdings, LLC accepts both Visa and MasterCard debit and credit cards for payment. Accordingly, VRG Diamond Holdings, LLC has been forced to pay

Defendants' supra-competitive interchange fees and to abide by Defendants' Competitive Restraints.  VRG Diamond Holdings, LLC, therefore, has been injured in its businesses and/or properties as a result of the unlawful conduct alleged herein.

216.   Plaintiffs and all their subsidiaries and affiliates identified in the attached Exhibits have timely opted out of the Rule 23(b)(3) settlement class preliminarily approved by the court on November 28, 2012 in the case captioned: In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, Case No. 1:05-md-01720-JG-JO, United States District Court for the Eastern District of New York.

## DEFENDANTS

217.   Until the corporate restructuring and initial public offering described below, Defendant Visa International Service Association was a non-stock Delaware corporation with its principal place of business in Foster City, California. Defendant Visa U.S.A., Inc. was a group-member of Visa International Service Association and was also a non-stock Delaware corporation.  Visa U.S.A., Inc. had its principal place of business in San Francisco, California.  Visa U.S.A., Inc.'s members were the financial institutions acting as issuing banks and acquiring banks in the Visa system.

218.   Defendants Visa, Inc., Visa International Service Association, and Visa U.S.A., Inc. are Delaware corporations with their principal place of business In Foster City, California.   Defendant Visa Inc. was created through a corporate reorganization in or around October 2007.   Visa U.S.A., Inc.'s member banks were the initial shareholders of Visa, Inc.

219.   Defendants Visa, Inc., Visa U.S.A., Inc., and Visa International Service Association are referred to collectively as "Visa" in this Complaint.

220.   Defendant MasterCard Incorporated was incorporated as a Delaware stock corporation in May 2001.   Its principal place of business is in Purchase, New York.

221.   Defendant MasterCard International Incorporated was formed in November 1966 as a Delaware membership corporation whose principal or affiliate members were its financial institution issuing banks and acquiring banks. Prior to the initial public offering described below, MasterCard International Incorporated was the principal operating subsidiary of MasterCard Incorporated. Defendant MasterCard International Incorporated is still a wholly owned subsidiary of MasterCard Incorporated and it also has its principal place of business in Purchase, New York.

222.   Defendants MasterCard International Incorporated and MasterCard Incorporated are referred to collectively as "MasterCard" in this Complaint.

## **ALLEGATIONS**

### THE PAYMENT CARD INDUSTRY IN GENERAL

223.   The payment card industry involves two categories of general purpose payment cards: (1) credit (including charge) cards and (2) debit cards.   As explained more fully below, credit cards constitute a separate product market from debit cards.

224.   Card issuers earn income when card users select and use their cards and when merchants accept their cards.  Issuing banks compete to have cardholders carry and use payment cards that they issue.  By agreeing to the Competitive Restraints, issuing banks have agreed not to compete among themselves for merchant acceptance of payment cards.

225.   Credit cards (other than charge cards) permit consumers to borrow the money for a purchase from the card issuer and to repay that debt over time, according to the provisions of a revolving-credit agreement between the cardholder and the issuing bank.  Charge cards provide an interest-free loan during a grace period.

226.   Issuing banks compete for cardholders and card usage by offering numerous credit card products, some of which offer features such as cash back rebates, low interest rates, low or no annual fees, and rewards programs tied to usage.  Cards that offer cash-back, points, or other usage benefits are often referred

to as "rewards cards."  Those rewards cards that offer the highest levels of rewards are referred to as "premium cards" and include cards such as Visa Signature Preferred and MasterCard World Elite.   Standard or "traditional" credit cards, which do not offer the same array of features to cardholders, include products such as Visa Traditional and the MasterCard Core Value card.   Interchange fees for premium credit cards are higher than the interchange fees merchants are charged on other rewards cards, which in turn are higher than those charged on standard credit card transactions.   Nevertheless, merchants do not have the ability to refuse to accept rewards cards.

227.   Debit cards are one means for demand deposit account holders to access the money in their accounts.   Pre-paid debit cards allow cardholders to access the funds deposited on the card when it was purchased.   There are two primary forms of authentication in use for debit cards in the United States.   One is signature-based, in which the cardholder's signature is usually (but not always) obtained at the time of the transaction.   The other is PIN-based, in which the cardholder enters a four-digit PIN to authenticate the cardholder.

228.   Because debit card transactions promptly withdraw funds from the cardholder's account or from the card balance, rather than allowing a grace period before billing and payment, they differ from credit card transactions in their utility to consumers.   These differences underlay the court's determination in *United*

*States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), that credit card transactions comprised a separate market from the market for debit card transactions.

## COMBINATIONS AND CONSPIRACIES

229.   Visa and MasterCard until recently were organized as joint ventures of their member issuing banks and acquiring banks.   As members of the joint ventures, the member banks agreed to a collection of restrictive rules, referred to herein as the Competitive Restraints, and agreed to impose those Competitive Restraints on merchants that accept Visa-branded and MasterCard-branded cards. Among the Competitive Restraints are "default" interchange fees that merchants are required to pay for the privilege of accepting Visa-branded and MasterCard-branded cards.   "Default" interchange fee rates are set by Visa and MasterCard for the benefit of their member issuing banks.   As a result of the Competitive Restraints, the "default" interchange fees are made binding.

230.   Through these joint ventures, Visa, MasterCard, and their respective issuing banks have collectively gained market power in the payment card market. The Competitive Restraints have eliminated competition among issuing banks for merchant acceptance and eliminated any possibility that competition between the issuing banks could enable separate terms of acceptance for the cards of each

issuing bank.   These Competitive Restraints have eliminated the development of competitive markets for merchant acceptance.

231.   The Competitive Restraints enforced by Visa and MasterCard, and the actions taken in furtherance of these restraints, constitute combinations and conspiracies in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

232.   In 2006 and 2008, respectively, MasterCard and Visa each changed their ownership structures through initial public offerings ("IPOs") wherein the member banks partially divested their ownership of Visa and MasterCard.   But the IPOs did not change the essential character of their combinations and conspiracies or the Competitive Restraints.   The motivation for these IPOs was to limit the appearance that Visa and MasterCard were controlled by their member banks. According to the prospectus for MasterCard's 2006 IPO, "heightened regulatory scrutiny and legal challenges" underlay the decision to make changes in the ownership structure of MasterCard.   In particular, MasterCard stated that "many of the legal and regulatory challenges we face are in part directed at our current ownership and governance structure in which our customers—or member financial institutions—own all of our common stock and are involved in our governance by having representatives serve on our global and regional boards of directors."

233. After the IPOs, neither Visa, MasterCard, nor any of the member banks took any affirmative action to withdraw from the respective combinations and conspiracies. To the contrary, even after the IPOs, the member banks of Visa and MasterCard continued to agree to and to enforce and adhere to the Competitive Restraints that eliminate competition among issuing banks for merchant acceptance. Visa and MasterCard have continued to set "default" interchange fees for the benefit of their issuing bank members. Thus, even after the IPOs, Visa's and MasterCard's members maintained and enforced the Competitive Restraints ensuring that they would not compete for merchant acceptance.

234. After the IPOs, as before, Visa and MasterCard serve as facilitators and coordinators of horizontal agreements among their member banks to continue to adhere to and enforce "default" interchange fees and the Competitive Restraints. It would be contrary to the independent self-interest of any single issuing bank to adhere to the Competitive Restraints without the agreement of the remaining issuing banks also to impose and adhere to those restraints. Visa and MasterCard, by acting as the managers of their respective combinations and conspiracies and coordinating agreements to continue imposing and adhering to the Competitive Restraints, eliminate competition for merchant acceptance among their respective issuing banks. But for the arrangements facilitated by Visa and MasterCard, the

member banks would pursue their own independent self-interest by competing for merchant acceptance of the cards they issue.

235.   Each issuing bank is an independently owned and independently managed business.   Each issuing bank is a separate economic actor pursuing separate economic interests.   In other aspects of their businesses, the member banks compete against one another.   For example, the banks compete with one another for cardholders by creating payment card products that offer an array of interest rates, annual fees, purchase rewards, and other features that will make their payment cards more attractive than those offered by other issuing banks.   As found in *United States v. Visa U.S.A., Inc.*, cardholders "can choose from thousands of different card products with varying terms and features, including a wide variety of rewards and co-branding programs and services such as automobile insurance, travel and reservation services, emergency medical services and purchase security/extended protection programs."   163 F. Supp. 2d at 334.   These facts continue to be true today.

236.   However, the member banks do not compete for merchant acceptance of the cards they issue.   Instead, both before and after the Visa and MasterCard IPOs, the member banks have ceded to Visa and MasterCard decision-making and action with respect to the terms upon which they will allow merchants to accept the cards they issue.   By continuing to agree to and adhere to the Competitive

Restraints and default interchange fees, the member banks have deprived the marketplace of independent centers of decision-making and, therefore, of actual or potential competition.

## THE RELEVANT PRODUCT MARKETS

237. The relevant product markets are the market for merchant acceptance of general purpose credit (including charge) cards and the market for merchant acceptance of debit cards. Credit cards and debit cards are not reasonably interchangeable with each other or with other forms of tender.

238. Banks issuing credit and debit cards compete with one another to issue their cards to consumers (cardholders) who use those cards to purchase goods and services from merchants. This competition occurs in the markets for the issuance of credit and debit cards. Absent the Competitive Restraints, banks issuing such cards would seek access to merchants that are willing to accept their cards as payment for the goods and services the merchants sell to consumers. As a result, absent the Competitive Restraints at issue in this case, issuing banks would compete over the terms of acceptance of their cards by merchants.

239. Merchant acceptance of general purpose credit cards is a relevant product market. A credit card is not interchangeable with a debit card or other form of tender. Many cardholders desire the ability to access a line of credit, defer payment, or other features offered by the credit cards. For this reason, Plaintiffs

and other merchants cannot discontinue acceptance of credit cards, even in the face of high or increasing interchange fees, without losing sales. Visa and MasterCard and their Member Banks are not constrained in the charges they impose for merchant acceptance of credit cards by the availability of debit cards and other forms of tender as payment options.

240. Merchant acceptance of debit cards is also a relevant product market. Debit cards are not reasonably interchangeable with credit cards and other forms of tender. Debit cards differ from credit cards in significant ways. Debit cards must be tied to a bank account or pre-paid, unlike credit cards. When a debit card is used, the funds are withdrawn from the cardholder's account either the same day or within a few days. Consumers who desire to pay for a transaction with immediately available funds may not want to carry large amounts of cash or checks on their person, and not all merchants accept checks. Consumers who cannot qualify for credit cards or have reached the credit limit on their credit cards may also prefer the use of debit cards to other options. Thus, merchants cannot discontinue acceptance of debit cards.

241. Debit cards are also regulated separately and differently from credit cards. As discussed above, in 2011 the Federal Reserve Board imposed a maximum level for debit card interchange fees charged by large banks pursuant to the Durbin Amendment. The legislation did not mandate that Federal Reserve

Board regulate interchange fees charged in connection with credit card transactions.

242.   Visa, MasterCard, and their Member Banks are not constrained in the charges they impose on merchants for debit card acceptance by the availability of credit cards or other forms of tender as a payment option.

## RELEVANT GEOGRAPHIC MARKET

243.   The relevant geographic market is the United States and its territories.

244.   The default interchange fees are set by Visa and MasterCard, respectively, on a national basis.  Similarly, the Competitive Restraints are specific to the United States and its territories.

245.   Plaintiffs operate throughout the United States.   The Competitive Restraints imposed on them require that they accept all cards of all issuing banks who are members of Visa or of MasterCard at "default" interchange fees at all of their outlets throughout the United States.

246.   Visa and MasterCard, and their largest issuing banks, advertise nationally and pursue promotional strategies aimed at the United States as a whole.

## THE COMPETITIVE RESTRAINTS

247.   On behalf of the issuing banks that are their members, Visa and MasterCard have adopted and imposed supra-competitive "default" interchange fees and other Competitive Restraints on Plaintiffs that eliminate competition.

These Competitive Restraints prevent competition among the issuing banks for transaction volume from merchants.  As a result, the Competitive Restraints cause Plaintiffs' costs of acceptance to be higher than would prevail in a competitive market.

248.   Collective Setting of Interchange:  Visa and MasterCard set so-called "default" interchange fees on credit card and debit card transactions that merchants are required to pay to their issuing banks.  The setting of "default" interchange fees and other Competitive Restraints constitute the fixing of prices within the meaning of the Sherman Act.

249.   Visa and MasterCard each have established complex "default" interchange fee schedules.  In setting the interchange fees that are paid to their member banks, Visa and MasterCard each acts as the manager of its respective combination, setting the price that merchants pay for card acceptance.  Interchange fees account for the largest portion of merchant costs for accepting such cards.

250.   Interchange fees are not set to recover Visa's or MasterCard's costs of providing network services.   Interchange is a fee that Visa and MasterCard, respectively, acting in combination with the issuing banks, require merchants to pay to the issuing banks.

251.   Visa purports to set non-binding "default" interchange fees.  Visa Core Principle No. 10.3 provides that "[i]nterchange reimbursement fees are

determined by Visa ... or may be customized where members have set their own financial terms for the interchange of a Visa transaction or Visa has entered into business agreements to promote acceptance and card usage."

252.   MasterCard also purports to set non-binding "default" interchange fees. MasterCard Rule 9.4 provides: "[a] transaction or cash disbursement cleared and settled between Customers gives rise to the payment of the appropriate interchange fee or service fee, as applicable.   The Corporation has the right to establish default interchange fees and default service fees (hereafter referred to as 'interchange fees' and 'service fees,' or collectively, 'fees'), it being understood that all such fees set by the Corporation apply only if there is no applicable bilateral interchange fee or service fee agreement between two Customers in place. . . . Unless an applicable bilateral interchange fee or service fee agreement between two Customers is in place, any intraregional or interregional fees established by the Corporation are binding on all Customers."

253.   Acquiring banks that do not deduct the applicable interchange fee when submitting a transaction for authorization, clearance, and settlement are subject to fines assessed by Visa and MasterCard.   Both Visa's and MasterCard's rules, quoted above, fix interchange, because the other Competitive Restraints remove any independent competition among issuing banks in the setting of interchange fees.

254.  Absent the Competitive Restraints, Plaintiffs would pay interchange fees for acceptance, if at all, as determined by competition among issuing banks for merchant acceptance.   In the markets created by the Visa and MasterCard combinations, Visa and MasterCard, acting for their member banks, establish interchange fee schedules for their member banks.   Plaintiffs are among the merchants injured by this collective setting of interchange fees by Visa and MasterCard.

255.  Honor All Cards Rules:  These rules require in relevant part that a merchant that accepts any Visa-branded or MasterCard-branded credit card must accept all Visa-branded or MasterCard-branded credit cards, no matter which bank issued the card or the card type.  Similarly, a merchant that accepts Visa-branded or MasterCard-branded debit cards must accept all Visa-branded or MasterCard-branded debit cards, no matter the issuing bank.  Because of the Honor All Cards Rules, Plaintiffs cannot reject any or all of the types of cards issued by any particular issuing bank.  Thus, Plaintiffs are precluded from gaining the benefits of competition as to the terms upon which they will accept or reject the cards of any issuing bank that is a member of Visa or MasterCard.  As a result, the "default" interchange fees become binding on Plaintiffs.

256.  All Outlets Rules:  The All Outlets Rules require merchants who accept Visa-branded or MasterCard-branded payment cards to accept those cards at

all of their merchant locations, even if the location is operating under a different trade name or banner.  A merchant is not permitted to accept the cards at some banners or trade names but not others.  These rules preclude merchants from gaining the benefits of competition as to the terms of acceptance (for example, by accepting certain cards at certain trade names or banners, but not others).

257.  No Discount Rules:  Under the No Discount Rules, merchants were only allowed to offer discounts to customers who paid in cash, rather than using a payment card.  A merchant's inability to offer various discounts impedes the benefits of competition as to the terms of acceptance with an issuing bank.

258.  No Surcharge Rules:  The No Surcharge Rules prohibit Plaintiffs from surcharging transactions in which a consumer used a Visa-branded card or a MasterCard-branded card.  These rules eliminate a merchant's ability to utilize surcharging as a tool in gaining the benefits of competition as to the terms of acceptance with an issuing bank.  Absent the rules, a merchant could surcharge a transaction in which the consumer uses a card that, for example, demands a higher interchange fee.

259.  The Competitive Restraints, individually and in combination, eliminate issuing bank competition for merchant acceptance.  In the absence of these rules, the market for merchant acceptance would be competitive.  Plaintiffs and the issuing banks would be able to gain the benefits of competition as to the

terms under which Plaintiffs would accept an issuing bank's cards, including the amount of interchange fees--if any--Plaintiffs would pay on transactions involving an issuing bank's cards.  Competition among issuing banks for merchant acceptance would result in lower interchange fees for Plaintiffs and allow them to enhance the value their customers receive.

260.  The Honor All Cards Rules, the No Discount Rules, the No Surcharges Rules, and the All Outlets Rules, individually and in combination, eliminate the incentives for Visa and MasterCard to compete for merchant acceptance through setting lower "default" interchange fees.

261.  In addition to the Competitive Restraints, a variety of other rules and regulations (often not publicly disclosed) enforced by Visa and MasterCard and their member banks also operate to support the anticompetitive effects of the Competitive Restraints and imposition of "default" interchange fees on Plaintiffs.

262.  The Competitive Restraints, including the collective setting of "default" interchange fees, are not reasonably necessary to accomplish any legitimate efficiency-generating objectives of the Visa and MasterCard combinations.  Furthermore, there exist numerous alternative means that are less harmful to competition by which any such objectives could be accomplished.

## MARKET POWER

263.   Visa and its issuing banks jointly have market power in the relevant market for merchant acceptance of general purpose credit cards in the United States and its territories.

264.   In 2001, in *United States v. Visa US.A., Inc.*, 163 F. Supp. 2d 322,341 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), the court found that Visa had market power in the market for credit card network services with a 47% share of the dollar volume of credit card transactions in the United States.  In 2003, in *In re Visa Check/MasterMoney Antitrust Litigation*, 2003 U.S. Dist. LEXIS 4965 (E.D.N.Y. Apr. 1, 2003), the court reaffirmed that Visa had market power in the credit card market based on a finding that its market share fluctuated between 43% and 47%, as well as the barriers to entering the relevant product market.  Visa's share of the credit card market has not changed significantly since these two holdings.  The prior judicial findings of market power demonstrate that Visa has market power in the general purpose credit card market.

265.   There are significant barriers to entry into the market for general purpose credit cards.  Indeed, the court in *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 341 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), specifically found that there are high barriers to entry into the general purpose credit card market.  Visa's former CEO described starting a new card network as a

"monumental" task involving expenditures and investment of over $1 billion.  Both AT&T and Citibank conducted entry analyses, but decided it would be unprofitable to attempt to start a competing general purpose credit card business.

266.  The difficulties associated with entering the network market are exemplified by the fact that no company has entered since Discover did so in 1985. Discover has never achieved more than a 7% share of the general purpose credit card market and its current share is approximately 5%.

267.  Visa's conduct is direct evidence of its market power and that of its issuing banks.  Visa promulgates and enforces the Competitive Restraints, which prevent competition among its issuing banks for merchant acceptance.  Absent the Competitive Restraints, Visa's credit card issuing banks would gain the benefits of competition as to the terms of merchant acceptance, including interchange fees, and Plaintiffs would benefit through lower interchange fees and other benefits from competition.

268.  Visa's "default" credit interchange fees demonstrate Visa's market power. Effective credit card interchange fees have risen over time, even as the costs of issuing credit cards have fallen for its member banks and even as interchange fees for debit cards have fallen.  Despite these increases, merchants have not stopped accepting Visa credit cards.  Further, Visa's market power is demonstrated by its ability to discriminate in price among types of merchants, by

distinguishing merchants by size, transactions by size, cards by type, and merchants by retail category.

269.   Visa's market power in credit cards is also demonstrated by the fact that when the Federal Reserve Board significantly reduced the interchange fees on debit transactions, few if any merchants chose to stop accepting Visa credit cards, and Visa did not reduce its credit card interchange fees.  In 2012, the first full year after implementation of reduced interchange fees on debit transactions, Visa credit card transactions and purchase volume increased.

270.   Competition with MasterCard does not eliminate Visa's exercise of market power in the market for merchant acceptance of general purpose credit cards.   During the period that Visa and MasterCard were both joint ventures consisting of their member banks, they adopted parallel rules that limited competition for merchant acceptance.   After their respective IPOs, Visa's and MasterCard's membership, rules, and their power to obtain high interchange fees from merchants have not changed and continue to constrain competition between Visa and MasterCard and among the members of both combinations.

271.   MasterCard and its issuing banks jointly have market power in the relevant market for merchant acceptance of general purpose credit cards in the United States.

272. In *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322, 341 (S.D.N.Y. 2001), *aff'd*, 344 F.3d 229 (2d Cir. 2003), the court held that MasterCard's 26% share of dollar volume of credit and charge card transactions was sufficient to demonstrate that it had market power in the market for credit card network services. In *In re Visa Check/MasterMoney Antitrust Litigation*, 2003 U.S. Dist. LEXIS 4965 (E.D.N.Y. Apr. 1, 2003), the court held that MasterCard's 26% to 28% share of the credit card market was sufficiently high to go to a jury on the question of MasterCard's market power. MasterCard's share of the credit card market has not changed significantly since those decisions.

273. MasterCard's conduct is direct evidence of its market power and that of its issuing banks. Interchange fees are set by MasterCard on behalf of its issuing banks. MasterCard also promulgates and enforces the Competitive Restraints, which prevent competition among its issuing banks for merchant acceptance. Absent the Competitive Restraints, MasterCard's credit card issuing banks would gain the benefits of competition as to the terms of merchant acceptance, including interchange fees, and Plaintiffs would benefit through lower interchange fees and other benefits from competition.

274. MasterCard's "default" credit interchange fees demonstrate MasterCard's market power. Effective credit card interchange fees have risen over time, even as the costs of issuing credit cards have fallen for its member banks and

even as interchange fees for debit cards have fallen.  Despite these increases, merchants have not stopped accepting MasterCard credit cards.  Further, MasterCard's market power is demonstrated by its ability to discriminate in price among types of merchants, by distinguishing merchants by size, transactions by size, cards by type, and merchants by retail category.

275.  Competition with Visa does not eliminate MasterCard's exercise of market power in the market for merchant acceptance of general purpose credit cards either.  During the period that Visa and MasterCard were joint ventures consisting of their member banks, they adopted rules that limited competition for merchant acceptance.  After their respective IPOs, Visa's and MasterCard's membership, rules, and (most importantly) power to obtain high interchange fees from merchants did not change and continue to constrain competition between Visa and MasterCard and among the members of both combinations.

276.  As alleged above, there are significant barriers to entry into the market for the provision of general purpose payment card network services to merchants.

277.  The debit card market is dominated by Visa and MasterCard.  Combined, Visa and MasterCard comprised about 75% of all debit purchase volume in 2004 and comprise over 80% today.  Only Visa, MasterCard, and Discover allow signature authorization of debit transactions.

278.   Visa, jointly with its issuing banks, and MasterCard, jointly with its issuing banks, each exercise market power in the market for merchant acceptance of debit cards.

279.   Visa and its issuing banks jointly have market power in the market for acceptance of debit cards.   Visa participates in and manages a combination comprised of the vast majority of issuing banks of debit cards, such that merchants are unable to refuse to accept Visa-branded debit cards.   This combination of issuing banks combined with the Competitive Restraints gives Visa market power. Visa has exercised and continues to exercise market power by requiring Plaintiffs to pay supra-competitive interchange fees and by imposing the Competitive Restraints.

280.   Visa's market power over merchants is demonstrated by the fact that, when the tie forcing merchants to accept Visa debit cards as a condition of accepting Visa credit cards was dropped in 2003, there is no evidence that merchants were able to stop accepting Visa debit cards despite the availability of lower cost PIN debit networks.   In addition, in 2011 the Federal Reserve Board found that Visa's debit interchange rates were significantly above cost.   Because of Visa's Competitive Restraints, merchants cannot gain the benefits of competition among issuing banks for terms of debit card acceptance.

281.   MasterCard and its issuing banks jointly have market power in the market for acceptance of debit cards.  MasterCard participates in and manages a combination comprised of a significant fraction of all issuers of debit cards, such that merchants are unable to refuse to accept MasterCard-branded debit cards. This combination of issuing banks combined with the Competitive Restraints gives MasterCard market power. MasterCard has exercised and continues to exercise market power by requiring Plaintiffs to pay supra-competitive interchange fees and by imposing the Competitive Restraints.

282.   MasterCard's market power over merchants is demonstrated by the fact that, when the tie forcing merchants to accept MasterCard debit cards as a condition of accepting MasterCard credit cards was dropped in 2003, few or no merchants stopped accepting MasterCard debit cards despite the availability of lower cost PIN debit networks.  In addition, in 2011 the Federal Reserve Board found that MasterCard's debit interchange rates were significantly above cost. Because of MasterCard's Competitive Restraints, merchants cannot gain the benefits of competition among issuing banks for terms of debit card acceptance.

## COMPETITIVE INJURY

283.   Visa and MasterCard use their market power to impose "default" interchange fees and the Competitive Restraints on Plaintiffs.

284.   The Competitive Restraints make it impossible for the Plaintiffs to gain the benefits of competition as to the terms of acceptance, including lower interchange fees with individual issuing banks.   The Competitive Restraints provide a mechanism for issuing banks to avoid competing for acceptance.  Absent the supra-competitive "default" interchange fees and the other Competitive Restraints, Plaintiffs would be able to gain the benefits of competition as to interchange fees, which would reduce them to a competitive level.  The changes to the Competitive Restraints that were instituted as a result of prior settlements and enforcement actions have not eliminated the market power of the combinations and have not curtailed the level or rise in effective interchange fees being paid by merchants.

285.   Each Plaintiff has been harmed by the actions of the Visa and MasterCard combinations.  The amount of interchange fees paid by each Plaintiff is supra-competitive.   The high interchange fees levied on Plaintiffs lead to increased merchandise prices for consumers or otherwise diminish the value their customers receive.  Thus, consumers, as well as merchants such as Plaintiffs, are harmed by the combinations' anticompetitive conduct, including the imposition of "default" interchange fees.

286.   But for the Competitive Restraints, competition among issuing banks for merchant acceptance would result in lower interchange fees.  Each Plaintiff

would have the opportunity to use the strategies it uses in other parts of its business or operations to obtain competitive acceptance terms.   As a result of the Competitive Restraints, card acceptance is a significant cost to Plaintiffs and they have no ability to gain lower costs in a competitive market.

287.   From 2004 to the present Plaintiffs have accepted Visa-branded and MasterCard-branded credit and debit cards.   Accordingly, Plaintiffs have been forced to abide by Visa's and MasterCard's unlawful Competitive Restraints and has been forced to pay supra-competitive interchange fees, all to its detriment.

## CLAIMS FOR RELIEF

### Count 1:  Violation of Section 1 of the Sherman Act, Collectively and Separately, by Visa's Competitive Restraints Governing Credit Cards

288.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 283 as if fully rewritten herein.

289.   The use of credit cards issued by members of Visa and the rules governing the use of such cards occur in and have a substantial anticompetitive effect on interstate commerce.

290.   Visa and its member banks are a combination and conspiracy within the meaning of Section 1 of the Sherman Act.  Visa's rules and related contracts constitute agreements within the meaning of Section 1 of the Sherman Act.  Visa's Competitive Restraints, as defined above, constitute horizontal agreements among Visa and its members both prior to and after Visa's reorganization and IPO.  Visa

has served and continues to serve as the manager of a combination that limits competition among the bank members of the combination through the rules governing credit cards agreed to by Visa members. Accordingly, by these arrangements, Visa has facilitated and continues to facilitate a horizontal agreement among its members, which would otherwise compete for merchant acceptance of the credit cards each issue. It would be contrary to the independent self-interest of individual issuing banks to forgo the ability to compete for merchant acceptance in the absence of an agreement with other issuing banks, managed by Visa, similarly not to compete.

291. In addition, Visa's rules and related contracts entered into before the Visa IPO constituted a horizontal agreement from which Visa and the member banks have never withdrawn. In changing its corporate form at the time of the IPO, Visa did not take any affirmative action to end its existing anticompetitive arrangements, either by communicating to its members a decision to withdraw from the rules and agreements with its members or by taking any other steps to effectuate withdrawal from the rules and agreements. Nor did its members take any steps to withdraw from the rules and agreements or take any other steps to effectuate withdrawal from the rules and agreements.

292. Alternatively, after the Visa IPO, the Competitive Restraints constitute vertical agreements in restraint of trade.

293.   As alleged above, Visa and its members jointly have market power in the market for merchant acceptance of general purpose credit cards.

294.   Individually and in combination, the Competitive Restraints constitute an illegal agreement to fix the price of acceptance of Visa-branded credit cards and to prevent the operation of and interfere with the competitive process with respect to the acceptance of Visa-branded credit cards, in violation of Section 1 of the Sherman Act.

295.  Visa's Honor All Cards Rules support the illegal price-fixing arrangement by eliminating the ability of merchants to gain the benefits of competition among individual issuing banks.  Under the Honor All Cards Rules, Visa affords merchants no choice but to accept Visa-branded cards from its issuing banks on an all-or-nothing basis.  Each issuing bank's cards, however, are separate products that consumers choose among based upon competition in terms among the issuing banks with respect to the individual terms and characteristics of those cards.  The Honor All Cards Rules eliminate merchant acceptance as one of the areas of competition among issuing banks.  By unlawfully forcing merchants to accept the Visa-branded cards of all issuing banks, the Honor All Cards Rule has the effect of fixing the price of acceptance paid by merchants.  But for the Honor All Cards Rule, competition among issuing banks for acceptance by merchants would lower the cost of acceptance.

296.   Visa's other Competitive Restraints, described above, further eliminate competition by removing the ability of merchants to gain the benefits of competition as to the fees paid to particular issuing banks.  This further eliminates merchant acceptance as one of the areas of competition among issuing banks. Absent these rules, merchants would have been able to (and would continue to be able to) use a variety of competitive strategies, ranging from not accepting the cards of certain issuing banks or not accepting certain card types at certain banners or trade names, to offering benefits to consumers tendering certain card types of certain issuing banks.  But for the Competitive Restraints, competition among issuing banks for acceptance, or favorable terms of acceptance, by merchants would lower the cost of acceptance for credit cards.

297.   Visa's setting of "default" interchange fees for the acceptance of Visa-branded credit cards further prevents the cost of acceptance from being determined between each Plaintiff and the various individual issuing banks in a competitive market.  Instead, Visa's supra-competitive interchange fees are set collectively by Visa in conjunction with or on behalf of all of its member issuing banks.  Absent the setting of "default interchange" fees for Visa-branded credit cards by Visa and the other Competitive Restraints managed by Visa, issuing banks would compete for acceptance by lowering the cost of acceptance of the cards for each issuer.

298.   As alleged above, Plaintiffs have suffered antitrust injury as a result of the illegal restraints on the costs charged for acceptance of credit cards by merchants, which are the result of Visa's Competitive Restraints.   The effect of these restraints has been to increase the cost of acceptance of credit cards paid by Plaintiffs, thereby injuring both Plaintiffs and consumers through higher costs and decreased consumer welfare.

### Count 2:  Violation of Section 1 of the Sherman Act, Collectively and Separately, by Visa's Competitive Restraints Governing Debit Cards

299.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 283 as if fully rewritten herein.

300.   The use of debit cards issued by members of Visa and the rules governing the use of such cards occur in and have a substantial anticompetitive effect on interstate commerce.

301.   Visa and its member banks are a combination and conspiracy within the meaning of Section 1 of the Sherman Act.   Visa's rules and related contracts constitute agreements within the meaning of Section 1 of the Sherman Act.   Visa's Competitive Restraints, as defined above, constitute horizontal agreements among Visa and its members both prior to and after Visa's reorganization and IPO.   Visa has served and continues to serve as the manager of a combination that limits competition between the bank members of the combination through the rules governing debit cards agreed to by Visa members.   Accordingly, by these

arrangements, Visa has facilitated and continues to facilitate a horizontal agreement among its members, which would otherwise compete for merchant acceptance of the debit cards each issues.  It would be contrary to the independent self-interest of individual issuing banks to forgo the ability to compete for merchant acceptance in the absence of an agreement with other issuing banks, managed by Visa, similarly not to compete.

302.   In addition, Visa's rules and related contracts entered into before the Visa IPO constituted a horizontal agreement from which Visa and the member banks have never withdrawn.  In changing its corporate form at the time of the IPO, Visa did not take any affirmative action to end its existing anticompetitive arrangements, either by communicating to its members a decision to withdraw from the rules and agreements with its members or by taking any other steps to effectuate withdrawal from the rules and agreements.  Nor did its members take any steps to withdraw from the rules and agreements or take any other steps to effectuate withdrawal from the rule and agreements.

303.   Alternatively, after the Visa IPO, the Competitive Restraints constitute vertical agreements in restraint of trade.

304.   As alleged above, Visa and its members jointly have market power in the market for merchant acceptance of debit cards.

305.  Individually and in combination, the Competitive Restraints constitute an illegal agreement to fix the price of acceptance of Visa-branded debit cards and to prevent the operation of and interfere with the competitive process with respect to the acceptance of debit cards, in violation of Section 1 of the Sherman Act.

306.  Visa's Honor All Cards Rules support the illegal price-fixing arrangement by eliminating the ability of merchants to gain the benefits of competition among individual issuing banks.  Under the Honor All Cards Rules, Visa affords merchants no choice but to accept cards from its issuing banks on an all-or-nothing basis.  Each issuing bank's cards, however, are separate products that consumers choose among based upon competition in terms among the issuing banks with respect to the individual terms and characteristics of those cards.  The Honor All Cards Rules eliminate merchant acceptance as one of the areas of competition among issuing banks.  By unlawfully forcing merchants to accept the Visa-branded cards of all issuing banks, the Honor All Cards Rule has the effect of fixing the price of acceptance paid by merchants.  But for the Honor All Cards Rule, competition among issuing banks for acceptance by merchants would lower the cost of acceptance.

307.  Visa's other Competitive Restraints, described above, further eliminate competition by removing the ability of merchants to gain the benefits of competition as to fees paid to particular issuing banks.  Absent these rules,

merchants would have been able to (and would continue to be able to) use a variety of competitive strategies, ranging from not accepting the cards of certain issuing banks or not accepting certain card types at certain locations, to offering benefits to consumers tendering certain card types of certain issuing banks.   But for the Competitive Restraints, competition among issuing banks for acceptance, or favorable terms of acceptance, by merchants would lower the cost of acceptance for debit cards.

308.   Visa's setting of "default" interchange fees for the acceptance of Visa-branded debit cards further prevents the cost of acceptance from being determined between each Plaintiff and the various individual issuing banks in a competitive market.   Instead, Visa's supra-competitive interchange fees have been set collectively by Visa in conjunction with or on behalf of all of its member issuing banks.   Absent the setting of "default" interchange fees for Visa-branded debit cards by Visa and the other Competitive Restraints managed by Visa, issuing banks would compete for acceptance by lowering the cost of acceptance of the cards for each issuing bank.

309.   The maximum debit interchange fees enacted by the Federal Reserve as a result of the Durbin Amendment have not eliminated the anticompetitive effects of Visa's setting of "default" interchange fees.   Regardless of the ultimate outcome of Judge Richard Leon's July 31, 2013 Order discussed above, the

damages suffered by Plaintiffs because of the imposition of supra-competitive debit interchange fees may be reduced by regulation pursuant to the Durbin Amendment, but such interchange fees being levied on Plaintiffs by the combination will almost certainly still be higher than they would be if there were active competition for merchant acceptance.  Accordingly, Plaintiffs will continue to suffer damage by being forced to pay supra-competitive interchange fees on Visa debit card transactions.

310.   As alleged above, Plaintiffs have suffered antitrust injury as a result of the illegal restraints on the costs charged for acceptance of debit cards by merchants, which are the result of Visa's Competitive Restraints.  The effect of these restraints has been to increase the cost of acceptance of debit cards paid by Plaintiffs, thereby injuring both Plaintiffs and consumers through higher costs and increased prices.

## Count 3:  Violation of Section 1 of the Sherman Act, Collectively and Separately, by MasterCard's Competitive Restraints Governing Credit Cards

311.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 283 as if fully rewritten herein.

312.   The use of credit cards issued by members of MasterCard and the rules governing the use of such cards occur in and have a substantial anticompetitive effect on interstate commerce.

313.   MasterCard and its member banks are a combination and conspiracy within the meaning of Section 1 of the Sherman Act.   MasterCard's rules and related contracts constitute agreements within the meaning of Section 1 of the Sherman Act.   MasterCard's Competitive Restraints, as defined above, constitute horizontal agreements among MasterCard and its members both prior to and after MasterCard's IPO.   MasterCard has served and continues to serve as the manager of a combination that limits competition among the bank members of the combination through the rules governing credit cards agreed to by MasterCard members.   Accordingly, by these arrangements, MasterCard has facilitated and continues to facilitate a horizontal agreement among its members, which would otherwise compete for merchant acceptance of the credit cards each issues.   It would be contrary to the independent self-interest of individual issuing banks to forgo the ability to compete for merchant acceptance in the absence of an agreement with other issuing banks, managed by MasterCard, similarly not to compete.

314.   In addition, MasterCard's rules and related contracts entered into before the MasterCard IPO constituted a horizontal agreement from which MasterCard and the member banks have never withdrawn.   In changing its ownership structure at the time of the IPO, MasterCard did not take any affirmative action to end its existing anticompetitive arrangements, either by communicating to

its members a decision to withdraw from the rules and agreements with its members or by taking any other steps to effectuate withdrawal from the rules and agreements. Nor did its members take any steps to withdraw from the rules and agreements or take any other steps to effectuate withdrawal from the rules and agreements.

315. Alternatively, after the MasterCard IPO, the Competitive Restraints constitute vertical agreements in restraint of trade.

316. As alleged above, MasterCard and its members jointly have market power in the market for merchant acceptance of general purpose credit cards.

317. Individually and in combination, the Competitive Restraints constitute an illegal agreement to fix the price of acceptance of MasterCard-branded credit cards and to prevent the operation of and interfere with the competitive process with respect to the acceptance of credit cards, in violation of Section 1 of the Sherman Act.

318. MasterCard's Honor All Cards Rules support the illegal price-fixing arrangement by eliminating the ability of merchants to gain the benefits of competition among individual issuing banks. Under the Honor All Cards Rules, MasterCard affords merchants no choice but to accept cards from its issuing banks on an all-or-nothing basis. Each issuing bank's cards, however, are separate products that consumers choose among based upon competition in terms among

the issuing banks with respect to the individual terms and characteristics of those cards. The Honor All Cards Rules eliminate merchant acceptance as one of the areas of competition among issuing banks. By unlawfully forcing merchants to accept the MasterCard-branded cards of all issuing banks, the Honor All Cards Rule has the effect of fixing the cost of acceptance paid by merchants. But for the Honor All Cards Rule, competition among issuing banks for acceptance by merchants would lower the cost of acceptance.

319. MasterCard's other Competitive Restraints, described above, further eliminate competition by removing the ability of merchants to gain the benefits of competition as to the fees paid to particular issuing banks. Absent these rules, merchants would have been able to (and would continue to be able to) use a variety of competitive strategies, ranging from not accepting the cards of certain issuing banks or not accepting certain card types at certain locations, to offering benefits to consumers tendering certain card types of certain issuing banks. But for the Competitive Restraints, competition among issuing banks for acceptance, or favorable terms of acceptance, by merchants would lower the cost of acceptance for credit cards.

320. MasterCard's setting of "default" interchange fees for the acceptance of MasterCard-branded credit cards further prevents the cost of acceptance from being determined between each Plaintiff and the various individual issuing banks

in a competitive market.  Instead, MasterCard's supra-competitive interchange fees are set collectively by MasterCard in conjunction with or on behalf of all of its member issuing banks.  Absent the setting of "default" interchange fees for MasterCard-branded credit cards by MasterCard and the other Competitive Restraints managed by MasterCard, issuing banks would compete for acceptance by lowering the cost of acceptance of the cards for each issuing bank.

321.   As alleged above, Plaintiffs have suffered antitrust injury as a result of the illegal restraints on the costs charged for acceptance of credit cards by merchants, which are the result of MasterCard's Competitive Restraints.  The effect of these restraints has been to increase the cost of acceptance of credit cards paid by Plaintiffs, thereby injuring both Plaintiffs and consumers through higher costs and increased prices.

## Count 4:  Violation of Section 1 of the Sherman Act, Collectively and Separately, by MasterCard's  Competitive Restraints Governing Debit Cards

322.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 283 as if fully rewritten herein.

323.   The use of debit cards issued by members of MasterCard and the rules governing the use of such cards occur in and have a substantial anticompetitive effect on interstate commerce.

324.   MasterCard and its member banks are a combination and conspiracy within the meaning of Section 1 of the Sherman Act.  MasterCard's rules and

related contracts constitute agreements within the meaning of Section 1 of the Sherman Act.  MasterCard's Competitive Restraints, as defined above, constitute horizontal agreements among MasterCard and its members both prior to and after MasterCard's IPO.  MasterCard has served and continues to serve as the manager of a combination and conspiracy that limits competition among the bank members of the combination through the rules governing debit cards agreed to by MasterCard members.   Accordingly, by these arrangements, MasterCard has facilitated and continues to facilitate a horizontal agreement among its members, which would otherwise compete for merchant acceptance of the debit cards each issues.  It would be contrary to the independent self-interest of individual issuing banks to forgo the ability to compete for merchant acceptance in the absence of an agreement with other issuing banks, managed by MasterCard, to similarly not compete.

325.  In addition, MasterCard's rules and related contracts entered into before the MasterCard IPO constituted a horizontal agreement from which MasterCard and the member banks have never withdrawn.   In changing its ownership structure at the time of the IPO, MasterCard did not take any affirmative action to end its existing anticompetitive arrangements, either by communicating to its members a decision to withdraw from the rules and agreements with its members or by taking any other steps to effectuate withdrawal from the rules and

agreements.  Nor did its members take any steps to withdraw from the rules and agreements or take any other steps to effectuate withdrawal from the rules and agreements.

326.  Alternatively, after the MasterCard IPO, the Competitive Restraints constitute vertical agreements in restraint of trade.

327.  As alleged above, MasterCard and its members jointly have market power in the market for merchant acceptance of debit cards.

328.  Individually and in combination, the Competitive Restraints constitute an illegal agreement to fix price of acceptance of MasterCard-branded debit cards and to prevent the operation of and interfere with the competitive process with respect to the acceptance of debit cards, in violation of Section 1 of the Sherman Act.

329.  MasterCard's Honor All Cards Rules support the illegal price-fixing arrangement by eliminating the ability of merchants to gain the benefits of competition among individual issuing banks.  Under the Honor All Cards Rules, MasterCard affords merchants no choice but to accept MasterCard-branded cards from its issuing banks on an all-or-nothing basis.  Each issuing bank's cards, however, are separate products that consumers choose among based upon competition in terms among the issuing banks with respect to the individual terms and characteristics of those cards.  The Honor All Cards Rules eliminate merchant

acceptance as one of the areas of competition among issuing banks.  By unlawfully forcing merchants to accept the MasterCard-branded cards of all issuing banks, the Honor All Cards Rule has the effect of fixing the prices of acceptance paid by merchants.  But for the Honor All Cards Rule, competition among issuing banks for acceptance by merchants would lower the cost of acceptance.

330.  MasterCard's Competitive Restraints, described above, further eliminate competition by removing the ability of merchants to gain the benefits of competition as to fees paid to particular issuing banks.  Absent these rules, merchants would have been able to (and would continue to be able to) use a variety of competitive strategies, ranging from not accepting the cards of certain issuing banks or not accepting certain card types at certain locations, to offering benefits to consumers tendering certain card types of certain issuing banks.  But for the Competitive Restraints, competition among issuing banks for acceptance, or favorable terms of acceptance, by merchants would lower the cost of acceptance for debit cards.

331.  MasterCard's setting of default interchange fees for the acceptance of MasterCard-branded debit cards further prevents the cost of acceptance from being determined between each Plaintiff and the various individual issuing banks in a competitive market.  Instead, MasterCard's supra-competitive interchange fees are set collectively by MasterCard in conjunction with or on behalf of all of its

member issuing banks.   Absent the setting of "default" interchange fees for MasterCard-branded debit cards by MasterCard and the other Competitive Restraints managed by MasterCard, issuing banks would compete for acceptance by lowering the cost of acceptance of the cards for each issuing bank.

332.   The maximum debit interchange fees enacted by the Federal Reserve as a result of the Durbin Amendment have not eliminated the anticompetitive effects of MasterCard's setting of "default" interchange fees.   Regardless of the ultimate outcome of Judge Richard Leon's July 31, 2013 Order discussed above, the damages suffered by Plaintiffs because of the imposition of supra-competitive debit interchange fees may be reduced by regulation pursuant to the Durbin Amendment, but such interchange fees being levied on Plaintiffs by the combination will almost certainly still be higher than they would be if there were active competition for merchant acceptance.   Accordingly, Plaintiffs will continue to suffer damage by being forced to pay supra-competitive interchange fees on MasterCard debit card transactions.

333.   As alleged above, Plaintiffs have suffered antitrust injury as a result of the illegal restraints on the costs charged for acceptance of debit cards by merchants, which are the result of MasterCard's Competitive Restraints.   The effect of these restraints has been to increase the cost of acceptance of debit cards paid by

Plaintiffs, thereby injuring both Plaintiffs and consumers through higher costs and increased prices.

## DAMAGES

334. Plaintiffs seek to recover from Defendants the following damages pursuant to 15 U.S.C. § 15(a) for the wrongful conduct outlined above:

- Actual damages for acts and omissions occurring prior to November 27, 2012;

- Treble damages on all actual damages found by the trier of fact;

- Attorneys' fees;

- Costs of suit; and

- Pre and post judgment interest at the maximum rate permitted by law.

Further, because their wrongful conduct was committed in combination and as part of a conspiracy, the Defendants should be jointly and severally liable for all damages found by the trier of fact.

## DEMAND FOR JURY TRIAL

335. Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs demand that, at the trial of this cause, a jury be empanelled to determine all disputed issues of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.     Judgment in favor of each Plaintiff and against each Defendant, in an amount to be determined at trial including, but not limited to, compensatory damages, trebled damages, and pre-judgment and post-judgment interest, as permitted by law;

B.     An award of the cost of the suit, including a reasonable attorney's fee; and

C.     Such other and further relief as the Court deems just, equitable, and proper.

Respectfully submitted,

By:   */s/ Jeffrey J. Angelovich*

Jeffrey J. Angelovich
Texas Bar No. 00786988
jangelovich@npraustin.com
Brad E. Seidel
Texas Bar No. 24008008
bseidel@npraustin.com
**NIX, PATTERSON & ROACH, LLP**
3600 N. Capital of Texas Hwy.
Building B, Suite 350
Austin, TX 78746
Telephone:   (512) 328-5333
Facsimile:  (512) 328-5335

**LEAD COUNSEL FOR ALL
PLAINTIFFS**

**OF COUNSEL:**

William Curtis Webb
Texas Bar No. 21035900
cwebb@beckredden.com
Fields Alexander
Texas Bar No. 00783528
falexander@beckredden.com
**BECK REDDEN LLP**
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Telephone:  (713) 951-3700
Facsimile:  (713) 951-3720
Richard E. Norman
Texas Bar No. 00788128
rnorman@crowleynorman.com
R. Martin Weber, Jr.
Texas Bar No. 00791895
mweber@crowleynorman.com
**CROWLEY NORMAN LLP**
Three Riverway, Suite 1775
Houston, Texas 77056

Telephone: (713) 651-1771
Facsimile: (713) 651-1775

OF COUNSEL FOR DELTA AIR LINES,
INC., DELTA PRIVATE JETS, INC., MLT,
INC., CALLAWAY GOLF COMPANY,
CALLAWAY GOLF INTERACTIVE,
INC., CALLAWAY GOLF SALES
COMPANY, UPLAY, INC., CITY OF
HOUSTON, DIAMOND FOODS, LLC,
EMERALD FOODS, INC., KEL, INC.
D/B/A DIMENSIONS, DUKE ENERGY
CORPORATION,  CINERGY
CORPORATION, DUKE ENERGY
BUSINESS SERVICES LLC, DUKE
ENERGY CAROLINAS LLC, DUKE
ENERGY FLORIDA, INC., DUKE
ENERGY OHIO, INC., DUKE ENERGY
INDIANA, INC., DUKE ENERGY
KENTUCKY, INC., DUKE ENERGY
PROGRESS, INC., PROGRESS ENERGY
SERVICES COMPANY LLC, PROGRESS
ENERGY, INC., HARRIS COUNTY,
TEXAS, HARRIS COUNTY HOSPITAL
DISTRICT D/B/A HARRIS COUNTY
HEALTH SYSTEM, HOST HOTELS &
RESORTS, L.P., HST LESSEE SLT LLC,
HST LESSEE BOSTON LLC, HST
LESSEE KEYSTONE LLC, HST LESSEE
NEEDHAM LLC, HST LESSEE SNYT
LLC, HST LESSEE CMBS LLC, HST
LESSEE SAN DIEGO LP, HST LESSEE
TUCSON LLC, HST LESSEE SR
HOUSTON LP, HST LESSEE WNY LLC,
HST UNION SQUARE LLC, CCSH
ATLANTA LLC, HST WRN LLC, HST
LESSEE CINCINNATI LLC, HST LESSEE
DENVER LLC, HST LESSEE
INDIANAPOLIS LLC, HST KIERLAND
LLC, HST LESSEE LAX LP, HST

LESSEE MISSION HILLS LP, HST
GRANT CENTRAL LLC, HST W.
SEATTLE LLC, HST LESSEE S. COAST
LP, HST LESSEE WALTHAM LLC,
GROUP 1 AUTOMOTIVE, INC., K
PARTNERS HOSPITALITY GROUP, LP,
THE MEN'S WEARHOUSE, INC.,
RELIANT ENERGY RETAIL SERVICES
LLC, NRG EV SERVICES LLC D/B/A
EVGO, US RETAILERS LLC D/B/A
PENNYWISE POWER, EVERYTHING
ENERGY LLC D/B/A INDEPENDENCE
ENERGY, RED WING BRANDS OF
AMERICA, INC., RED WING SHOE
COMPANY, INC., SERVICE
CORPORATION INTERNATIONAL, SCI
FUNERAL & CEMETERY PURCHASING
COOPERATIVE INC., THE NEPTUNE
SOCIETY, INC., SUIT MART, INC.,
VALERO ENERGY CORPORATION,
VALERO MARKETING AND SUPPLY
COMPANY, W.W. GRAINGER, INC.,
ZORO TOOLS, INC., IMPERIAL
SUPPLIES LLC, AND GHC SPECIALTY
BRANDS, LLC


Lars L. Berg
Texas Bar No. 00787072
lars.berg@kellyhart.com
**KELLY HART & HALLMAN, LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Facsimile: (817) 878-9280

Richard E. Norman
Texas Bar No. 00788128
rnorman@crowleynorman.com
R. Martin Weber, Jr.

Texas Bar No. 00791895
mweber@crowleynorman.com
**Crowley Norman LLP**
Three Riverway, Suite 1775
Houston, Texas 77056
Telephone: (713) 651-1771
Facsimile: (713) 651-1775

OF COUNSEL FOR AIR CANADA,
SOCIETE AIR FRANCE, AIR NEW
ZEALAND LIMITED, BLUE NILE, LLC,
CHEAPCARRIBBEAN.COM, INC., EL
AL ISRAEL AIRLINES LTD., ETIHAD
AIRWAYS, EVA AIRWAYS CORP., LQ
MANAGEMENT L.L.C., LA QUINTA
INNS, INC., PIER 1 IMPORTS (U.S.),
INC., QANTAS AIRWAYS LIMITED,
JETSTAR AIRWAYS LIMITED,
RADIOSHACK CORPORATION, KIOSK
OPERATIONS, INC., SCK, INC. A/K/A
SC KIOSKS, INC., TE ELECTRONICS LP,
ATLANTIC RETAIL VENTURES, INC.,
ITC SERVICE, INC., RED ROOF INNS,
INC., RED ROOF FRANCHISING, LLC,
RRI RESERVATIONS, LLC, R-ROOF1,
LLC, R-ROOF II, LLC, R-ROOF III, LLC,
R-ROOF IV, LLC, R-ROOF V, LLC, R-
ROOF VI, LLC, R-ROOF HOLDINGS I,
LLC, R-ROOF HOLDINGS II, LLC, R-
ROOF FUNDS, LLC, R-ROOF ASSETS,
LLC, R-ROOF BUSINESS TRUST I, R-
ROOF BUSINESS TRUST IV, R-ROOF
BUSINESS TRUST VI, R-ROOF MEZZ I,
LLC, R-ROOF MEZZ II, LLC, R-ROOF
MEZZ III, LLC, R-ROOF MEZZ IV, LLC,
R-ROOF MEZZ V, LLC, R-ROOF MEZZ
VI, LLC, R-ROOF MEZZ VI A, LLC, R-
ROOF MEZZ VI B, LLC, SINGAPORE
AIRLINES LIMITED, THE MARK
TRAVEL CORPORATION, THE MARK

TRAVEL CORPORATION DBA
LAMACCHIA ENTERPRISES INC., THE
MARK TRAVEL CORPORATION DBA
UNITED VACATIONS HAWAII, MGM
RESORTS VACATIONS, LLC DBA MGM
MIRAGE RESORTS VACATIONS, THE
MARK TRAVEL CORPORATION DBA
BLUE SKY TOURS INC., THE MARK
TRAVEL CORPORATION DBA
NEVADA COACHES LLC, THE MARK
TRAVEL CORPORATION DBA
SHOWTIME TOURS, TRANS GLOBAL
TOURS, LLC, THE MARK TRAVEL
CORPORATION DBA ADVENTURE
TOURS USA, THE MARK TRAVEL
CORPORATION DBA VAX VACATION
ACCESS, THE MARK TRAVEL
CORPORATION DBA MARK
INTERNATIONAL, BESTWAY
LIMOUSINE, INC. DBA CASINO
HOLIDAY, VACATIONS TOGETHER,
INC., VACATION TOGETHER INC. DBA
SEARS VACATION, TRATERRA, THE
MARK TRAVEL CORPORATION DBA
TRISEPT SOLUTIONS, THE MARK
TRAVEL CORPORATION DBA GLOBAL
BOOKING SOLUTIONS (G2
SWITCHWORKS), BESTWAY
LIMOUSINE, HIDDEN GLEN AT
BENTDALE FARMS, TXU ENERGY
RETAIL COMPANY LLC, AND TRIP
NETWORK INC.
("CHEAPTICKETS.COM")


Richard E. Norman
Texas Bar No. 00788128
rnorman@crowleynorman.com
R. Martin Weber, Jr.
Texas Bar No. 00791895

mweber@crowleynorman.com
**CROWLEY NORMAN LLP**
Three Riverway, Suite 1775
Houston, Texas 77056
Telephone: (713) 651-1771
Facsimile: (713) 651-1775

OF COUNSEL FOR ORBITZ
WORLDWIDE, LLC, ORBITZ
LLC ("ORBITZ.COM")


Bryan J. Wick
Texas Bar No. 24003169
bryan.wick@wickphillips.com
David J. Drez III
Texas Bar No. 24007127
david.drez@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
2100 Ross Ave., Suite 950
Dallas, Texas 75201
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

OF COUNSEL FOR CINEMARK USA,
INC., CNMK TEXAS PROPERTIES,
LLC, LAREDO THEATER, LTD.,
GREELEY, LTD., CINEMARK
PARTNERS II, LTD., CENTURY
THEATERS, INC., J HILBURN, INC.,
AND UNITED SUPERMARKETS, LLC


Hon. David Folsom (ret.)
Texas Bar No. 07210800
dfolsom@jw.com
**JACKSON WALKER LLP**
6004 Summerfield Drive
Texarkana, Texas  75503
Telephone: (903) 255-3250

Facsimile: (903) 255-3265
Charles L. Babcock
Texas Bar No. 01479500
cbabcock@jw.com
1401 McKinney Street, Suite 1900
Houston, Texas  77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
David T. Moran
Texas Bar No. 14419400
dmoran@jw.com
901 Main Street, Suite 6000
Dallas, Texas  75202
Telephone:  (214) 953-6000

OF COUNSEL FOR MURPHY OIL USA,
INC., TRAVELOCITY.COM LP, AMWAY
CORP., AND ALTICOR INC.


John H. Kim
Texas Bar No. 00784393
jhk@thekimlawfirm.com
David A. McDougald
Texas Bar No. 13570525
david@thekimlawfirm.com
Denise H. Mitchell
Texas Bar No. 24010933
denise@thekimlawfirm.com
4309 Yoakum Boulevard, Suite 2000
Houston, Texas 77006
Telephone: (713) 522-1177
Facsimile: (888) 809-6793

OF COUNSEL FOR CST BRANDS, INC.,
CST USA, INC., CST SERVICES, LLC,
AUTOTRONIC SYSTEMS, INC., BIG
DIAMOND, LLC, BIG DIAMOND
NUMBER 1, LLC, CST ARKANSAS
STATIONS, LLC, CST CALIFORNIA

STATIONS, INC., CST DIAMOND, LP,
CST MARKETING AND SUPPLY
COMPANY, CST METRO LLC, CST
SECURITY SERVICES, INC., DIAMOND
SHAMROCK ARIZONA, INC.,
DIAMOND SHAMROCK STATIONS,
INC., EMERALD MARKETING, INC.,
NATIONAL CONVENIENCE STORES
INCORPORATED, SIGMOR BEVERAGE,
INC., SIGMOR COMPANY, LLC,
SIGMOR NUMBER 5, INC., SIGMOR
NUMBER 43, INC., SIGMOR NUMBER
79, INC., SIGMOR NUMBER 80, INC.,
SIGMOR NUMBER 103, INC., SIGMOR
NUMBER 105, INC., SIGMOR NUMBER
119, INC., SIGMOR NUMBER 178, INC.,
SIGMOR NUMBER 196, INC., SIGMOR
NUMBER 238, INC., SIGMOR NUMBER
259, INC., SIGMOR NUMBER 422, INC.,
SKIPPER BEVERAGE COMPANY, LLC,
SUNSHINE BEVERAGE CO., TOC-DS
COMPANY, VALLEY SHAMROCK, INC.
AND VRG DIAMOND HOLDINGS, LLC